# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 98-2095

JERRY L. WOODS, APPELLANT,

V.

HERSHEL W. GOBER,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    December 15, 2000  )

*Keith D. Snyder*, of Olney, Maryland, was on the pleadings for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; and *Mary Ann Flynn*, Deputy Assistant General Counsel, all of Washington, D.C., were on the pleadings for the appellee.

Before KRAMER, IVERS, and STEINBERG, *Judges*.

STEINBERG, *Judge*, filed the opinion of the Court. IVERS, *Judge*, filed an opinion concurring in part and dissenting in part.

STEINBERG, *Judge*: The appellant, Vietnam veteran Jerry L. Woods, appeals, through counsel, a July 21, 1998, decision of the Board of Veterans' Appeals (BVA or Board) that determined that an effective date earlier than August 10, 1989, for an award of Department of Veterans Affairs (VA) service connection for post-traumatic stress disorder (PTSD) was not warranted and that denied a claim of clear and unmistakable error (CUE) in a February 1985 VA regional office (RO) decision that had denied service connection for PTSD. Record (R.) at 4, 14. The appellant has filed a brief and a reply brief and the Secretary has filed a brief. The appellant appeals only the question of an earlier effective date for the award of service connection for PTSD. Brief (Br.) at 1. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons

that follow, the Court will vacate in part the BVA decision and remand the earlier-effective-date matter.

## I. Relevant Background

The veteran served in the U.S. Army from January 1966 to October 1968, with service in Vietnam. R. at 18. In December 1984, he applied for service connection for, inter alia, PTSD. R. at 75-78. On his application, he listed his address as the VA Medical Center (VAMC), Unit 8, Sheridan, Wyoming, 82801. R. at 77. He also listed his ex-wife as having custody of his children and gave her address and included his sister as his nearest living relative, showing her address as "Havre, Mont." *Id*. On two statements that the veteran sent to the VARO in early February, the veteran used the same Sheridan VAMC address. R. at 90, 93. In January 1985, the RO requested from the Sheridan VAMC examination and treatment reports regarding, inter alia, the veteran's PTSD claim. R. at 87. The record on appeal (ROA) contains a copy of one clinical record, received at the RO on January 25, 1985, that provided, apparently, a narrative summary of the veteran's hospitalization, but that VAMC report copy does not clearly indicate the veteran's name or address. R. at 83-84.

On February 6, 1985, the Sheridan VAMC notified the RO that the veteran had been released from that facility for "outpatient treatment". R. at 98. There is no indication in the ROA that the veteran provided the RO with a change of address at that time. Before he was discharged, the veteran reported to a VA physician that he had been accepted in a 30-day program in Fort Harrison, Montana, apparently at the VAMC there, provided that he could arrive by February 7, 1985. R. at 127, 464. On February 11, 1985, the RO denied his PTSD claim and mailed notice of that decision to the veteran at the Sheridan VAMC address. R. at 104. The Sheridan VAMC apparently forwarded that notice to the Fort Harrison VAMC, but that notice was ultimately returned to the RO as undeliverable. R. at 105-06. There is no evidence in the ROA that the veteran participated at that time in any program at the Fort Harrison VAMC, but it does appear that he voluntarily checked himself into the Montana State Hospital on February 15, 1985, and was discharged on March 14, 1985 (R. at 263-66).

In August 1989, the veteran filed a claim to reopen his previously and finally disallowed PTSD claim. R. at 108. In October 1989, the RO again requested from the Sheridan VAMC

hospital reports for the veteran for the period of December 1985 to February 1986. R. at 116, 133. In December 1989, the RO received copies of two reports from the Sheridan VAMC (R. at 127-31), including a copy of the clinical record that the RO had previously received from that VAMC in January 1985 (R. at 129-30). That December 1989 copy of the January 1985 VAMC clinical record included at the bottom the veteran's name and a Havre, Montana, address as follows: "WOODS, JERRY L.[,] 451 5th St, N[,] Havre, MT 59501" (Havre, Montana, address). R. at 127.

In January 1990, the RO denied the veteran's PTSD claim (R. at 137), but in September 1990 the RO granted the PTSD claim and assigned a 50% rating, effective August 10, 1989, the date that the veteran had filed his claim to reopen (R. at 202-03). He filed a Notice of Disagreement (NOD) as to the September 1990 RO decision. R. at 208. In September 1991, the RO confirmed the 50% rating for PTSD. R. at 296. In October 1991, he submitted a letter from the Social Security Administration (SSA) that indicated that he had qualified for disability benefits as of October 1987. R. at 342-45. In a December 1992 decision, the Board denied a rating above 50% for PTSD. R. at 367-76. In that decision, the Board noted that, although it appeared that the veteran had never received notice of the February 1985 RO decision, he had not, before that decision, provided VA with an updated address nor had he contacted VA concerning disability benefits for several years after that 1985 RO decision. R. at 374. The veteran appealed that BVA decision to this Court, and the Court in March 1995 issued an order remanding the claim pursuant to the parties' joint motion for remand, which required the Board to "obtain all pertinent service, VA, and private medical records, including Social Security records", in order to determine if the veteran satisfied the requirements for a 70% or 100% rating. R. at 378, 379-85. In June 1995, the Board remanded the claim with instructions that the RO "contact the [SSA] and request copies of a decision and all records, including medical records, regarding their determination of the veteran's employability for Social Security disability purposes". R. at 389. There is no evidence in the ROA that the RO made such a request.

In a March 1997 administrative decision, the RO determined that it had fulfilled its duty to notify the veteran of the 1985 RO decision by sending a copy of that decision to the veteran's last known address, the Sheridan VAMC. R. at 498-99. Also in March 1997, the RO granted the veteran a 70% rating for PTSD and a rating of total disability due to individual unemployability, both

effective August 10, 1989. R. at 501. The RO found no error in its 1985 mailing because it had been sent to the address provided by the veteran and he had not informed VA of any other address. R. at 503. The veteran filed an NOD as to the effective date, arguing that the RO should have used the information on his December 1984 application to locate him after he was discharged from the Sheridan VAMC. R. at 496, 536-37.

In the July 1998 BVA decision here on appeal, the Board determined, inter alia, that the veteran was not entitled to an earlier effective date for the award of service connection for PTSD because it found that the 1985 RO decision was final in that the RO had mailed notice of that decision to the veteran's "last known address" as it was required to do by VA regulation. R. at 6.

## II. Analysis

The determination of the effective date for an original claim is governed by 38 U.S.C. § 5110(a), which provides:

> Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

38 U.S.C. § 5110(a). The implementing regulation for original claims provides that the effective date shall be the date of receipt of the claim or the date entitlement arose, whichever is later, unless the claim is received within one year after separation from service. 38 C.F.R. § 3.400(b)(2) (1999); *see also Tucker v. West*, 11 Vet.App. 369, 372 (1998) (concerning effective date of original claim for service connection); *Dinsay v. Brown*, 9 Vet.App. 79, 87 (1996). The regulation for claims to reopen provides that the effective date is the "[d]ate of the receipt of claim or [the] date entitlement arose, whichever is later". 38 C.F.R. § 3.400(r) (1999); *see also Link v. West*, 12 Vet.App. 39, 46 (1998) (effective date of reopened claim is the date of the application to reopen or facts found, whichever is later).

A Board determination of the proper effective date is a finding of fact. *See ibid.* (citing *Hanson v. Brown*, 9 Vet.App. 29, 32 (1996)). The Court reviews BVA findings of fact using the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). In determining whether

a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA, . . . [the Court] cannot overturn them." *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990); *see also Elkins (Joe) v. West*, 12 Vet.App. 209, 216 (1999) (en banc) ("[u]nder this standard, we cannot reverse a finding simply because we would have reached a different conclusion based upon the same record" (citing *Gilbert*, *supra*)).

### A. Date of Receipt of Claim

*1. Secretary's Duty to Send to Veteran Notice of RO Decision.* The appellant argues that the PTSD claim, which the RO denied in February 1985, is still pending before VA because the Secretary has failed to demonstrate that he fulfilled his obligation to mail notice of the February 1985 RO decision to the veteran. Br. at 1. That argument, in essence, is that the January 1985 RO decision has not become final because the RO failed to notify the veteran of that decision and of his right to appeal it to the Board and that, therefore, the date of the RO's receipt of his PTSD claim is that of his original December 1984 application, not that of his August 1989 claim to reopen.

"Under the Court's current caselaw, it is well established, under 38 U.S.C. § 5104(a) and 38 C.F.R. §§ 3.103 and 19.25 (199[9]), that the RO 'must provide notice of the right to appeal in regular and in simultaneously contested claims.'" *Parham v. West*, 13 Vet.App. 59, 59 (1999) (quoting *Thurber v. Brown*, 5 Vet.App. 119, 123 (1993)). However, the current statutory and regulatory provisions cited in *Parham* were not in existence at the time of the 1985 RO decision. The current statutory provision, enacted in 1989 by the Veterans' Benefits Amendments of 1989, Pub. L. No. 101-237, § 115(a)(1), 103 Stat. 2062, 2065 (1989), provides that, where the Secretary has made a decision "affecting the provision of benefits to a claimant, the Secretary shall, on a timely basis, provide to the claimant . . . notice of such decision." 38 U.S.C. § 5104(a). The current version of 38 C.F.R. § 3.103 was promulgated in 1990, *see* 55 Fed. Reg. 13,522, 13,527 (1990), and provides:

> (a) *Statement of policy*. Every claimant has the right to written notice of the decision made on his or her claim . . . .

> (b) *The right to notice*--(1) *General*. Claimants and their representatives are entitled to notice of any decision made by VA affecting the payment of benefits or the granting or relief. Such notice shall clearly set forth the decision made, and

applicable effective date, the reason(s) for the decision, . . . and the right, as well as the necessary procedures and time limits, to initiate an appeal of the decision.

. . . .

(f) *Notification of decisions.* The claimant or beneficiary and his or her representative will be notified in writing of decisions affecting the payment of benefits or granting relief.

38 C.F.R. § 3.103(a), (b), (f). The version applicable in January 1985 provided only:

(e) *Notification of decisions.* The claimant will be notified of any decision affecting the payment of benefits or granting relief.

38 C.F.R. § 3.103(e) (1985).)

As to VA "notification of rights", 38 U.S.C. § 4005 (now 38 U.S.C. § 7105(b)(1)) provided in pertinent part:

Except in the case of simultaneously contested claims, notice of disagreement shall be filed within one year from the date of mailing of notice of the result of initial review or determination.

38 U.S.C. § 4005(b)(1) (1985). In addition, part 19 of title 38 of the C.F.R. was revised in 1992, *see* 57 Fed. Reg. 4,088, 4,106 (1992), and the regulation applicable in 1985, 38 C.F.R. § 19.114 (1985), was renumbered and somewhat modified to create 38 C.F.R. § 19.25, which provides:

The claimant and his or her representative, if any, will be informed of appellate rights provided by 38 U.S.C. chapters 71 and 72 . . . . The agency of original jurisdiction will provide this information in each notification of a determination of entitlement or nonentitlement to [VA] benefits.

38 C.F.R. § 19.25. The regulation applicable at the time of the February 1985 RO decision provided, to essentially the same effect, in terms of the right to appeal to the BVA:

The claimant and the representative, if any, will be informed of the right to initiate an appeal and the time within which to do so . . . . This information will be included in each notification of a determination of entitlement or nonentitlement to [VA] benefits by the agency of original jurisdiction.

38 C.F.R. § 19.114 (1985). The Court notes that the Board and both parties here have assumed that the RO had a duty in 1985 to send to the veteran notice of the 1985 RO decision and of his right to appeal it to the

Board.  The Court agrees.  Based on the language of §19.114 (1985) in force at the time of the 1985 RO decision, the Court holds that the RO had a regulatory duty to inform the veteran of his right to appeal the 1985 RO decision.

The regulation in effect in 1985 did not address the place to which notice was to be sent to a claimant and any representative "of the right to initiate an appeal".  38 C.F.R. § 19.114 (1985).  In his brief, the Secretary seems to assume that notice of the decision and the claimant's appellate rights would have to be "sent to the appellate's 'latest address of record'".  Br. at 12 (quoting *Hyson v. Brown*, 5 Vet.App. 262, 265 (1993)), 15 (referring to "viable mailing addresses for the appellant"), 19 (referring to VA duty to mail notice to appellant's "last known address of record").  Also, the Board, quoting and applying *Hyson*, *supra*, stated that "the Board must demonstrate that notice was sent to the veteran's latest address of record in the case currently on appeal" and that "it is only where a file discloses other possible and plausible addressees that an attempt should be made to locate the veteran at an alternate known address".  R. at 8-9.  The Board then concluded that "VA carried the burden of demonstrating that notice of the February 1985 [RO] decision . . . was sent to the veteran's latest address of record."  R. at 10.

The Court has been unable to find any statutory or regulatory provision in effect in 1985 that specifies anything about the place where the notice to the claimant should be mailed or delivered.  (The first reference in the statute as to the mailing of notice of a decision came in the 1988 enactment of 38 U.S.C. § 7104(e) (then 38 U.S.C. § 4004(e)) by the Veterans' Judicial Review Act, Pub. L. No. 100-687, § 205, 102 Stat. 4105, 4111 (1988), which required notice of a BVA decision to be mailed "to the claimant at the last known address of the claimant."  38 U.S.C. § 7104(e)(1).  Furthermore, as noted above, the section 5104(a) provision as to notice of RO decisions was enacted in 1989.)  Nonetheless, for purposes of this analysis, the Court assumes that a "last known address of record" requirement or practice was in effect at the time of the February 1985 mailing of notice of the RO decision to the claimant.  Thus, the next question is whether the RO, in fact, fulfilled its responsibilities pursuant to 38 C.F.R. § 19.114 (1985) to provide the veteran with notice of the 1985 RO decision and his right to appeal it.

*2. Presumption of Regularity*.  There is a presumption of regularity that attaches to the actions of public officials.  *See INS v. Miranda*, 459 U.S. 14, 18 (1982); *United States v. Chemical*

*Foundation, Inc.*, 272 U.S. 1, 14-15 (1926); *Morris v. Sullivan*, 897 F.2d 553, 560 (D.C. Cir. 1990). This Court has applied the presumption of regularity to all manner of VA processes and procedures. *See*, *e.g.*, *Redding v. West*, 13 Vet.App. 512, 515 (2000) (applying presumption of regularity as to whether RO received veteran's power of attorney that was mailed by veteran to correct RO address); *Baldwin v. West*, 13 Vet.App. 1, 5-6 (1999) (applying presumption of regularity as to whether RO examined and considered service medical records); *Schoolman v. West*, 12 Vet.App. 307, 310 (1999) (applying presumption as to whether RO sent to claimant the application form for dependency and indemnity compensation). In this case, that presumption attaches to two actions: (1) The Secretary's mailing of notice of the 1985 RO decision and his right to appeal it; and (2) the VAMC's photocopying of the January 1985 VAMC clinical record.

      **a**. ***Presumption as applied to RO notice of decision to veteran:*** The Court has held that there is a presumption of regularity that the Secretary properly discharged his official duties by mailing a copy of a VA decision to the last known address of the appellant and the appellant's representative, if any, on the date that the decision was issued. *See Davis (Desmond) v. Brown*, 7 Vet.App. 298, 300 (1994); *Ashley v. Derwinski*, 2 Vet.App. 62, 64-65, *mot. for recons. granted*, *mot. to dismiss denied*, 2 Vet.App. 307 (1992); *Chute v. Derwinski*, 1 Vet.App. 352, 353 (1991). The appellant may rebut that presumption by submitting "clear evidence to the effect that [VA's] 'regular' mailing practices are not regular or that they were not followed", and the "burden then shifts to the Secretary to establish that the [VA] decision was mailed to the veteran". *Davis*, *supra* (quoting *Ashley*, 2 Vet.App. at 309); *see also Chute*, *supra*.

      Absent evidence that the veteran notified VA of a change of address and absent evidence that any notice sent to him at his last known address has been returned as undeliverable, VA is entitled to rely on that address. *See Cross v. Brown*, 9 Vet.App. 18, 19 (1996); *Thompson (Charles) v. Brown*, 8 Vet.App. 169, 178-79 (1995), *recons. on other grounds*, 9 Vet.App. 173 (1996); *see also Hyson*, 5 Vet.App. at 264-65. "However, where a mailing is returned as undeliverable and a claimant's file discloses other possible and plausible addresses, [VA] must attempt to locate the veteran at the alternative known addresses." *Cross*, *supra*; *see also Thompson (Charles)* and *Hyson*, both *supra*.

The Secretary argues that "*Hyson* does not require VA to reexamine the file in all cases to determine 'whether another address is available'" because "the *Hyson* Court specifically limited that decision to the 'peculiar' facts of that case". Br. at 14. However, as indicated above, this Court has applied the *Hyson* holding in both *Cross* and *Thompson (Charles)*, both *supra*, where VA sent notice of a BVA decision to a veteran at the "last known address" and that notice was returned as undeliverable. We perceive no significant difference in the fact that the *Cross* and *Thompson* cases involved BVA decisions, whereas the instant case involves an RO decision. Thus, where, as here, an RO has sent to a veteran notice of an RO decision but that notice was returned as undeliverable, that RO has the obligation to ascertain by a review of the claims file whether there are "other possible and plausible addresses" for the veteran. *Cross*, 9 Vet.App. at 19-20. Hence, the presumption of regularity as here applied to a regular mailing is rebutted and the burden has shifted to the Secretary to establish that that obligation was discharged.

We hold that the Secretary has failed to meet his burden. Although, in essence, both the Board (R. at 8) and the Secretary (Brief at 14-15) state that there was no other "possible and plausible" address to which the RO decision could have been mailed to the veteran, the Court notes that there is no dispute that the January 1985 VAMC clinical record was before the RO at the time of its 1985 decision and that, therefore, it also was before the RO at the time that the notice of the 1985 decision mailed to the veteran at the Sheridan VAMC was returned to the RO as undeliverable. Although the 1985 copy of that clinical record in the ROA does not reflect any address of the veteran, what appears to be the same clinical record, received by the RO in 1989, shows the Havre, Montana, address as the current address of the veteran.

*b*. ***Presumption as applied to VAMC photocopying of its record***: The presumption of regularity applies here with equal force to the VAMC transmittal to the RO of a complete copy of the January 1985 VAMC clinical record -- that is, a copy that revealed the veteran's name and his Havre, Montana, address, as did the copy of that record that was sent to the RO by the VAMC in 1989 (R. at 129). This second application of the presumption of regularity serves to show that the 1985 and 1989 copies are copies of the same document and that the contents of each are the same, including the showing of the 1985 address. In this regard, the Court notes that the absence of that address in the 1985 copy would appear to reflect only a problem in copying that document for

9

purposes of creating the ROA, and that such absence certainly is not sufficient to rebut this second application of the presumption as to the address being a part of the 1985 copy. Moreover, neither the Board nor the Secretary in any way dispute that the 1985 and the 1989 copies are of the same medical record.

     *c. Effect of application of presumption to mailing and photocopying*: Therefore, the Court holds that the claims file did, indeed, contain another address for the veteran to which the RO decision could have been mailed and that, because no such mailing occurred, the Secretary has failed to overcome his burden and the presumption of regular mailing remains rebutted. Accordingly, the Court also holds that the RO did not properly notify the veteran of its February 1985 decision and that, consequently, the veteran's December 1984 claim for PTSD is still pending. Because the pendency of that December 1984 claim will affect any determination of the effective date of the veteran's PTSD claim, the Court will remand the matter to the Board to readjudicate this earlier-effective-date issue in accordance with this opinion.

### B. Social Security Records and Date Entitlement Arose

     The appellant argues, citing *Stegall v. West*, 11 Vet.App. 268 (1998), that the RO erred in failing to comply with the Court's March 1995 order granting the parties' joint remand motion that required VA to obtain, inter alia, Social Security records (R. at 378, 383), and to comply with the Board's June 1995 remand order that the RO contact the SSA and request a copy of the SSA decision and of all records it had as to the veteran's unemployability (R. at 398). The Secretary confesses in his brief that it does not appear that the RO made any request for the veteran's Social Security records. Br. at 7, 19.

     The Secretary argues, nonetheless, that the appellant's argument should be rejected because it is not pertinent to the earlier-effective-date issue, which is the only issue before the Court. Br. at 20. The Court holds, however, that there is evidence in the record that the veteran was receiving SSA disability benefits as early as October 1987 (R. at 342), and that any such evidence that might support an earlier-effective date for PTSD pursuant to 38 U.S.C. § 5110(a), (b)(2) and 38 C.F.R. § 3.400(b)(2), would be relevant to the instant matter. The Court notes that the earlier-effective-date matter is on direct appeal from the veteran's service-connection claim as to PTSD, which was effective in August 1989, and there is, therefore, no question but that the claim was well grounded.

10

Pursuant to 38 U.S.C. § 5107(a) as in effect during the pendency of this claim, once a claimant submitted a well-grounded claim, the Secretary was required to assist that claimant "in developing the facts pertinent to the claim", *see* 38 C.F.R. § 3.159 (1999); *Epps v. Gober*, 126 F.3d 1464, 1469 (Fed. Cir. 1997); *Grivois v. Brown*, 6 Vet.App. 136, 139 (1994), and that duty involved requesting information from other Federal departments or agencies, *see* 38 U.S.C. § 5106, 5107(a). The SSA records would be "pertinent" to the effective date for the award of PTSD service connection, because they may provide medical evidence of whether he had a diagnosis of PTSD earlier than the August 1989 date assigned to that award in the September 1990 RO decision. The following quote (adjusted to reflect the facts of the instant case) from the Court's recent opinion in *McGrath v. Gober* illustrates the posture of this case:

> In sum, the Court finds that this issue must be remanded to the Board for readjudication of the effective date of the appellant's PTSD claim and to assign the appropriate disability ratings if necessary. First, the Board must determine when the appellant's service-connected disability manifested itself under . . . all of the "facts found," including the [SSA records] in question, and assign an effective date no earlier than [December 1984]. Of course, whether or not that evidence submitted is credible and sufficient to support a determination that an earlier effective date is warranted is a finding of fact for the Board to determine in the first instance. *See Hensley v. West*, 212 F.3d 1255 (Fed. Cir. 2000). Second, if the Board has assigned an earlier effective date of an award, the Board must assign the appropriate disability rating or ratings. Dependent on the "facts found," this rating may be a constant rating if the disability has been consistent in severity or a "staged" rating if the disability has fluctuated in severity. *See Fenderson v. West*, 12 Vet.App. 119 (1999).

*McGrath*, 14 Vet.App. 28, 35 (2000). Accordingly, in light of evidence indicating that the appellant was receiving Social Security disability benefits (R. at 342), VA was obligated to have attempted to obtain the appellant's SSA records pursuant to its duty to assist under section 5107(a) as in effect during the pendency of this case, and a remand would be necessary in order for VA to make that request. *See Voerth v. West*, 13 Vet.App. 117, 121 (1999) (once claim is well grounded, VA has duty to assist that includes responsibility to obtain any relevant records from SSA); *Baker v. West*, 11 Vet.App. 163, 169 (1998) (when VA is put on notice of SSA records prior to issuance of final decision, Board must seek to obtain records pursuant to section 5107(a) duty to assist); *Murincsak v. Derwinski*, 2 Vet.App. 363, 370 (1992) (VA has statutory duty to acquire both SSA decision and supporting medical records pertinent to well-grounded claim); *see also* 38 U.S.C. § 5103A(b)(c)(3)

11

(as added by the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, § 3, 114 Stat. 2096 (Nov. 9, 2000) and relating to VA obtaining any relevant records of any Federal department or agency in all disability compensation claims).

Moreover, in *Stegall*, this Court held that "a remand by this Court or the Board confers on the veteran or other claimant, as a matter of law, the right to compliance with the remand orders" and that "the Secretary . . . [had] a concomitant duty to ensure compliance with the terms of the remand" and that thus "the Board itself errs in failing to insure compliance." *Stegall*, 11 Vet.App. at 271; *see also Roberts (Melvyn) v. West*, 13 Vet.App. 185, 189 (1999) (no *Stegall* duty absent submission of well-grounded claim). As to this claim, both the Court, by virtue of its March 1995 order granting the joint remand motion (R. at 378), and the Board, in its June 1995 remand order (R. at 387), required the RO to contact the SSA and obtain any Social Security records that would be pertinent to the veteran's PTSD claim. Because, as noted by the Secretary, there is no evidence that the RO complied with those remand instructions, a remand is also required by *Stegall* in order for the Secretary to obtain any pertinent records from the SSA.

### III. Conclusion

Upon consideration of the foregoing analysis, the ROA, and the submissions of the parties, the Court vacates in part the July 21, 1998, BVA decision and remands the earlier-effective-date matter for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 5107, 5110, 7104(a), (d)(1); 38 C.F.R. § 3.400; *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), all consistent with this opinion and in accordance with all applicable law and regulation and with section 302 of the Veterans' Benefits Improvements Act, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday v. Brown*, 7 Vet.App. 517, 533-34 (1995). On remand, the appellant will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order), and all applicable law and regulation. As noted in part II., above, a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and

imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall*, *supra*. A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

In light of the Court's March 1995 remand order that was not complied with, the Secretary is directed to seek the Social Security records at issue here not later than 30 days after the date of issuance of this opinion and to report to the Court not later than 90 days after the date of such opinion issuance as to whether those SSA records have been obtained. *See Friscia v. Brown*, 7 Vet.App. 294, 297-98 (1994); *cf. Dambach v. Gober*, 223 F.3d 1376, 1381 (Fed. Cir. 2000) ("[w]e believe it would be appropriate for the . . . Court to set a deadline by which this veteran's case will be concluded").

VACATED IN PART AND REMANDED.


IVERS, *Judge*, concurring in part and dissenting in part: I concur in the majority's conclusion that the veteran's December 1984 claim is still pending and its decision to remand his case on that basis. However, I must dissent as to the Court's order directing the Secretary to obtain the veteran's Social Security Administration (SSA) records. It is an action that is at best superfluous.

The Court has correctly concluded that the RO did not properly notify the veteran of its February 1985 decision denying his claim. Based upon this procedural failure, the Court found that the veteran's 1984 claim is still open and pending before the RO. *See Matter of the Fee Agreement of Cox*, 10 Vet.App. 361, 374-75 (1997)*; see also Tablazon v. Brown*, 8 Vet.App. 359, 361 (1995) (failing to procedurally comply with the statutorily mandated requirements prevents a claim from becoming final for purposes of an appeal to the Court). Section 3.160(c) of the Code of Federal Regulations (C.F.R.) defines a "pending claim" as "[a]n application, formal or informal, which has not been finally adjudicated." Since the veteran's claim is pending, it is subject to further development by the RO. *See Price v. Brown*, 8 Vet.App. 527 (1995). "Further development" would require that the RO obtain the veteran's SSA records because evidence contained in the record and the veteran's appeal have served to put VA on notice of the existence of SSA records and their

13

relevance to the veteran's claim. *See Hayes v. Brown*, 9 Vet.App. 67, 73-74 (1996) ("VA is required to obtain evidence from the [SSA]); *see also McCormick v. Gober*, 14 Vet.App. 39 (2000); *Collier v. Derwinski*, 1 Vet.App. 413, 417 (1991). Therefore, ordering the Secretary to perform an act already required by law seems unnecessary.

It is clear that the Secretary did not fully comply with the remand instructions of this Court, and that he should be admonished in that regard. The veteran had access to, if not actual possession of the SSA records in question. The duty to assist is not a one-way street, and the veteran could have submitted the SSA records to the RO. *See Hurd v. West*, 13 Vet.App. 449, 452 (2000) (veteran cannot passively wait for help from VA).

Additionally, while I agree that the veteran's SSA records should be obtained, I believe the majority has inflated the importance of these records in establishing the veteran's entitlement to an earlier effective date. Section 5110 (a) of title 38 of the U.S. Code provides that "the effective date of an award based on an original claim . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." The regulation provides that the effective date shall be either the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 C.F.R. § 3.400(b)(2) (1991). There is no evidence in the record, nor is there an allegation by the veteran, that the SSA disability benefits he was receiving in October 1987 were based on his suffering from PTSD. Therefore, the majority's insistence that these SSA records might provide the requisite evidence the veteran needs to establish entitlement to an earlier effective date is speculative, at best.