Citation Nr: 1045633 
Decision Date: 12/06/10 Archive Date: 12/14/10

DOCKET NO. 06-11 244 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Boston, 
Massachusetts

THE ISSUES

1. Entitlement to service connection for a low back disorder, to 
include lumbar disc herniation with osteoarthritis, claimed as 
secondary to the service connected disability of osteoarthritis 
and chondromalacia of the left knee.

2. Entitlement to service connection for varicose veins of the 
right leg, claimed as secondary to the service connected 
disability of osteoarthritis and chondromalacia of the left knee.

REPRESENTATION

Appellant represented by: Disabled American Veterans

ATTORNEY FOR THE BOARD

C. J. Houbeck, Associate Counsel

INTRODUCTION

The Veteran had active service from November 1973 to August 1976.

This matter comes before the Board of Veterans' Appeals (Board) 
on appeal from a March 2005 Regional Office (RO) in Boston, 
Massachusetts rating decision, which denied the claims on appeal.

The Veteran's claims were remanded for additional development in 
April 2009. The requested development having been completed, the 
claims have been returned to the Board for adjudication.

FINDINGS OF FACT

1. The preponderance of the evidence demonstrates that a low 
back disorder, to include lumbar disc herniation with 
osteoarthritis, was not initially manifested during service or 
within one year of service and was not proximately caused by the 
Veteran's service-connected left knee disability, or other 
incident of service.

2. The preponderance of the evidence demonstrates that varicose 
veins of the right leg were not initially manifested during 
service and were not proximately caused by the Veteran's service-
connected left knee disability, or other incident of service.

CONCLUSIONS OF LAW

1. Service connection for a low back disorder, to include lumbar 
disc herniation with osteoarthritis, is not warranted. 38 
U.S.C.A. §§ 1110, 1112, 1131, 5107 (West 2002); 38 C.F.R. § 3.310 
(2006); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309 (2010).

2. Service connection for varicose veins of the right leg is not 
warranted. 38 U.S.C.A. §§ 1110, 1112, 1131, 5107 (West 2002); 
38 C.F.R. § 3.310 (2006); 38 C.F.R. §§ 3.303, 3.304 (2010).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has thoroughly reviewed all the evidence in the 
Veteran's claims file. Although the Board has an obligation to 
provide reasons and bases supporting this decision, there is no 
need to discuss, in detail, the extensive evidence submitted by 
or on behalf of the Veteran. See Gonzales v. West, 218 F.3d 
1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire 
record, but does not have to discuss each piece of evidence). 
The analysis below focuses on the most salient and relevant 
evidence and on what this evidence shows, or fails to show, on 
the claim. The Veteran must not assume that the Board has 
overlooked pieces of evidence that are not explicitly discussed 
herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the 
law requires only that the Board address its reasons for 
rejecting evidence favorable to the Veteran).

Veterans Claims Assistance Act of 2000 (VCAA)

With respect to the Veteran's claims, the Department of Veteran's 
Affairs (VA) has met all statutory and regulatory notice and duty 
to assist provisions. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 
5107, 5126 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 
3.156(a), 3.159, 3.326(a) (2010).

Under the VCAA, when VA receives a complete or substantially 
complete application for benefits, it is required to notify the 
Veteran and his or her representative, if any, of any information 
and medical or lay evidence that is necessary to substantiate the 
claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio 
v. Principi, 16 Vet. App. 183 (2002). In Pelegrini v. Principi, 
18 Vet. App. 112, 120-21 (2004) (Pelegrini II), the United States 
Court of Appeals for Veterans Claims (Court) held that VA must 
inform the Veteran of any information and evidence not of record 
(1) that is necessary to substantiate the claim; (2) that VA will 
seek to provide; (3) that the Veteran is expected to provide; and 
(4) request that the Veteran provide any evidence in his or her 
possession that pertains to the claim. The requirement of 
requesting that the Veteran provide any evidence in his 
possession that pertains to the claim was eliminated by the 
Secretary during the course of this appeal. See 73 Fed. Reg. 
23353 (final rule eliminating fourth element notice as required 
under Pelegrini II, effective May 30, 2008). Thus, any error 
related to this element is harmless. 

VCAA letters dated in June 2005, April 2009, June 2009, and 
February 2010 fully satisfied the duty to notify provisions. See 
38 U.S.C.A. § 5103(a) (West 2002 & Supp. 2010); 38 C.F.R. 
§ 3.159(b)(1) (2010); Quartuccio, at 187. The Veteran was 
advised that it was ultimately his responsibility to give VA any 
evidence pertaining to the claims. The letters informed him that 
additional information or evidence was needed to support his 
claims, and asked him to send the information or evidence to VA. 
 See Pelegrini II, at 120-121.

Several of the letters also explained to the Veteran how 
disability ratings and effective dates are determined. See 
Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

The Board also concludes VA's duty to assist has been satisfied. 
The Veteran's service treatment records and VA treatment records 
are in the file. Private medical records identified by the 
Veteran have been obtained, to the extent possible. In that 
regard, the Board notes that the claim was remanded in April 
2009, in part, to obtain certain private treatment records from 
treatment providers identified by the Veteran, including the 
provider identified as having treated the Veteran for a low back 
problem in 1994 and thereafter, including a laminectomy at L5-S1, 
that according to the Veteran was considered a workplace injury. 
In that regard, the Board observes that the RO sent the Veteran 
multiple letters requesting that he provide contact information 
and a release to allow the RO to seek the identified records. 
The Veteran failed to respond to any of the letters. While VA 
has a duty to assist the veteran in substantiating his claim, 
that duty is not a one-way street. Woods v. Gober, 14 Vet. App. 
214, 224 (2000); see also Hurd v. West, 13 Vet. App. 449, 452 
(2000) (veteran cannot passively wait for help from VA). The 
Veteran has at no time referenced additional outstanding records 
that he wanted VA to obtain or that he felt were relevant to the 
claims. 

The duty to assist also includes providing a medical examination 
or obtaining a medical opinion when such is necessary to make a 
decision on the claim. 38 C.F.R. § 3.159(c)(4)(i) (2010). In 
this case, the Board notes that the Veteran was provided VA 
examinations in January 2005 and October 2009. The October 2009 
examiner considered the Veteran's claims of having a low back 
disability and varicose veins of the right lower extremity caused 
by a service-connected left knee injury or other incident of 
service; however the examiner concluded that it was more likely 
than not that the Veteran's disability was caused by the general 
nature of his strenuous post-service work with the United States 
Postal Service (USPS) and that the disabilities were not further 
aggravated beyond their natural progression by the Veteran's 
service-connected left knee disability or by some other incident 
of service. As will be discussed in greater detail below, the 
examiner's opinions were based on review of the claims file 
and/or available medical records, the Veteran's reported history, 
his current symptoms, and a physical examination. The Board, 
therefore, finds the October 2009 VA examination report to be 
thorough, complete, and sufficient upon which to base a decision 
with respect to the Veteran's claims for service connection. See 
Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (when VA 
undertakes to provide a VA examination or obtain a VA opinion, it 
must ensure that the examination or opinion is adequate).

As there is no indication that any failure on the part of VA to 
provide additional notice or assistance reasonably affects the 
outcome of this case, the Board finds that any such failure is 
harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), 
rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 
(Fed. Cir. 2006).

Service Connection

Service connection may be established for disability resulting 
from personal injury suffered or disease contracted in the line 
of duty in the active military, naval, or air service. 38 
U.S.C.A. § 1131 (West 2002). That an injury or disease occurred 
in service is not enough; there must be chronic disability 
resulting from that injury or disease. If there is no showing of 
a resulting chronic condition during service, then a showing of 
continuity of symptomatology after service is required to support 
a finding of chronicity. 38 C.F.R. § 3.303(b) (2010). Service 
connection may also be granted for any injury or disease 
diagnosed after discharge, when all the evidence, including that 
pertinent to service, establishes that the disease or injury was 
incurred in service. 38 C.F.R. § 3.303(d).

When a chronic disease, to include arthritis, becomes manifest to 
a degree of 10 percent within one year of the Veteran's discharge 
from service, such disease shall be presumed to have been 
incurred in service, even though there is no evidence of such 
disease during the Veteran's period of service. 38 U.S.C.A. 
§§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. In this case, 
the Veteran has been diagnosed with arthritis of the low back; 
however, such a diagnosis was not made within one year of 
service. Indeed, the diagnosis was not made until multiple 
decades after service. As such, service connection for a low 
back disability on a presumptive basis is not warranted. 
 
To establish a right to compensation for a present disability on 
a direct basis, a Veteran must show: "(1) the existence of a 
present disability; (2) in-service incurrence or aggravation of a 
disease or injury; and (3) a causal relationship between the 
present disability and the disease or injury incurred or 
aggravated during service." Shedden v. Principi, 381 F.3d 1163, 
1167 (Fed. Cir. 2004). 

Service connection may also be established for any disability 
which is proximately due to or the result of a service-connected 
disease or injury. See 38 C.F.R. § 3.310 (2010). Establishing 
service connection on a secondary basis requires evidence 
sufficient to show (1) that a current disability exists and (2) 
that the current disability was either (a) caused by or (b) 
aggravated by a service-connected disability. Id. 

The Board observes that the provisions of 38 C.F.R. § 3.310 were 
amended effective as of October 20, 2006, during the pendency of 
the instant appeal. See 71 Fed. Reg. 52744-47 (Sept. 7, 2006). 
The amendment sets a standard by which a claim based on 
aggravation of a non-service-connected disability by service-
connected one is judged. Although the VA has indicated that the 
purpose of the regulation was merely to apply the Court's ruling 
in Allen, it was made clear in the comments to the regulation 
that the changes were intended to place a burden on the Veteran 
to establish a pre-aggravation baseline level of disability for 
the non-service connected disability before an award of service 
connection based on aggravation may be made. This had not been 
the VA's practice and thus suggests that the recent change 
amounts to a substantive change in the regulation. For this 
reason and as the Veteran's claim was pending before the 
regulatory change was made, the Board will consider his claim 
under the prior version of 38 C.F.R. § 3.310 as it is more 
favorable to the Veteran.

The Veteran has been service-connected for a left knee disability 
since August 1976. The Veteran claims that his current low back 
disability and varicose veins of the right lower extremity were 
caused by his service-connected left knee disability. 
Specifically, the Veteran contends that his left knee problems 
caused him to overcompensate and put additional strain on his 
right lower extremity and back in order to perform the demanding 
physical duties of his job with the USPS.

The Veteran's service treatment records do not indicate 
complaints, treatment, or diagnoses of a low back disability or 
varicose veins of the right lower extremity. Indeed, the Veteran 
concedes that his back problems and varicose veins began many 
years after his military service. 

After service, in September 2004 the Veteran was prescribed 
compression stockings. Based on the Veteran's reports in his 
claim, in January 2005 he was afforded a VA examination. At that 
time, the Veteran attributed his back and varicose vein problems 
to his left knee disability. The examiner noted an April 2003 
MRI showing mild central disc herniation and degenerative facet 
arthropathy at L4-L5 and mild diffuse disc bulge or herniation 
and degenerative facet arthropathy at L5-S1, as well as evidence 
of a previous laminectomy on the right and minimal disc bulge at 
L3-L4. The Veteran also reported that he had had a laminectomy 
in 1994 on his back at L5-S1, which had helped for a while but 
that in the previous 3 years the pain had increased. The Veteran 
currently worked as a mail handler for the USPS. On examination, 
the Veteran had some tenderness in the low back and limited 
forward flexion of the spine. Contemporaneous x-rays showed 
minimal degenerative changes to the bilateral knees and 
lumbosacral spine. The examiner concluded that the Veteran's 
back problems were unrelated to his military service, as there 
was no documented evidence in the service treatment records to 
support the claim.

Thereafter, private treatment records indicate ongoing treatment 
for the Veteran's low back and bilateral lower extremity 
problems, including steroid injections and pain medication. In 
May 2005, the Veteran had a steady gait that was antalgic on the 
right. The Veteran had decreased forward flexion. While the 
Veteran continued to receive treatment for back and knee pains, 
subsequent treatment records consistently noted a normal gait, 
including records from June 2005, September 2005, December 2005, 
January 2006, April 2006, January 2009, March 2009, April 2009, 
and May 2009.

In support of his claim, the Veteran submitted a letter dated in 
June 2009 from the Veteran's treatment provider at the above-
noted private treatment facility. The physician assistant opined 
that the Veteran "has chronic lumbar discomfort, lumbar 
spondylosis secondary to years of abnormal gait/ambulation. He 
had a previous traumatic event at the left femur and patella many 
years ago and as a direct result of this, his gait has been 
altered. He continues to have significant knee and lumbar 
discomfort."

Pursuant to the Board's April 2009 remand, the Veteran was 
afforded another VA examination in October 2009. The examiner 
noted review of the claims file and medical records and 
specifically observed that the service treatment records were 
absent for complaints of back problems or varicose veins. At 
that time, the Veteran reported that his back problems started in 
the 1990s. He claimed to have had surgery in 1994 that was 
determined to be work-related and subsequent treatment 
thereafter. The Veteran denied any falls, foot or leg weakness, 
or unsteadiness. On examination, the Veteran had a normal gait 
with no evidence of abnormal weight bearing. The Veteran also 
had normal posture, head position, symmetry in appearance, and no 
abnormal spinal curvatures. Contemporaneous x-rays showed no 
significant changes. The examiner diagnosed degenerative disc 
disease. The Veteran noted that he retired a few years 
previously after having worked for 32 years with the USPS. As to 
etiology, the examiner stated that it was less likely than not 
that the Veteran's current low back disability was caused or 
aggravated by a service connected disability or other incident of 
service. As to rationale, the examiner concluded that it was 
more likely that the Veteran's current low back disability was 
related to the Veteran's age, his potential work-related injury 
at USPS with surgery in 1994, and an overuse injury due to his 
physically demanding job with USPS for 32 years. As such, the 
examiner concluded that the Veteran's injuries would have 
occurred due to these outlined factors and were unrelated to his 
military service or his bilateral knee disabilities. 

With respect to his varicose vein disability, the Veteran stated 
that he had been having problems since the early 2000s. On 
examination, there was a minimal, barely visible, superficial 
area of mild varicose veins. As such, the examiner diagnosed 
minimal varicose veins of the right upper leg. As to etiology, 
the examiner stated that it was less likely than not that the 
Veteran's current varicose veins of the right lower extremity 
were caused or aggravated by a service connected disability or 
other incident of service. As to rationale, the examiner 
concluded that it was more likely that the Veteran's varicose 
veins were caused by prolonged standing and walking over more 
than 32 years at the USPS. As such, the examiner concluded that 
the Veteran's injuries would have occurred due to the nature of 
the Veteran's job and were unrelated to his military service or 
his bilateral knee disabilities. 

It is clear from the record that the Veteran has current low back 
and varicose vein disabilities. As noted above, the Veteran 
contends that these disabilities were proximately caused by his 
service-connected left knee disability. The Board has 
considered, therefore, whether the Veteran's current low back 
disability and varicose veins of the right lower extremity are 
proximately due to or the result of his service-connected left 
knee disability. Based on the evidence of record, the Board 
concludes they are not.

The Board finds the opinions expressed in the October 2009 VA 
examiner's report to be credible and probative. The report was 
based on an interview of the Veteran, his reported medical 
history, appropriate diagnostic testing, and physical 
examination. Further, a complete and through rationale is 
provided for the opinions rendered. As noted, the examining 
physician considered it more likely that the Veteran's subsequent 
32 year physically demanding job at the USPS and the Veteran's 
age the most likely cause of his current disabilities and found 
no evidence to suggest that the Veteran's left knee disability or 
other incident of service could account for the low back 
disability or the varicose veins of the right lower extremity. 
The examiner's conclusion is fully explained and consistent with 
the evidence of record. In that regard, the Board specifically 
finds that the examiner's opinion contemplated and rejected both 
that the Veteran's current low back and right lower extremity 
varicose vein disabilities were caused by his left knee 
disability or had been permanently aggravated by the same. The 
examiner's opinion clearly contemplated both causation and 
aggravation.

Furthermore, the Board has considered the Veteran's contentions 
that his current low back and varicose vein disabilities were 
caused by his overcompensating for left knee pain over the years 
at the USPS. In this regard, the Board acknowledges that the 
Veteran is competent to give evidence about what he experienced; 
for example, he is competent to discuss the existence of low back 
pain and varicose veins. See Washington v. Nicholson, 19 Vet. 
App. 362, 368 (2005). Indeed, the Board acknowledges that the 
Veteran may be capable of diagnosing physically observable non-
complex disorders, such as varicose veins. See Barr, 21 Vet. 
App. at 309. However, in most cases, the Veteran is not 
competent to render an opinion as to the cause or etiology of any 
current disorder because he does not have the requisite medical 
knowledge or training. See Rucker v. Brown, 10 Vet. App. 67, 74 
(1997) (stating that competency must be distinguished from weight 
and credibility, which are factual determinations going to the 
probative value of the evidence). In this instance, therefore, 
the Veteran as a lay person has not been shown to be capable of 
making medical conclusions, especially as to complex medical 
diagnoses such as a link between his current lumbar spine and 
right lower extremity varicose veins disabilities and his left 
knee disability. As such, the Board ascribes far more weight to 
the conclusions of the October 2009 medical professional who 
concluded that the Veteran's current low back and right lower 
extremity varicose vein disabilities were not caused or 
aggravated by his left knee disability. See Jandreau v. 
Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (explaining in footnote 
4 that a veteran is competent to provide a diagnosis of a simple 
condition such as a broken leg, but not competent to provide 
evidence as to more complex medical questions).

With respect to the Veteran's low back disability claim, the 
Board has also considered the June 2009 letter from the Veteran's 
private treating physician assistant. As noted, the physician 
assistant attributed the Veteran's current low back disability to 
years of abnormal gait and ambulation as a result of his left 
knee disability. However, as discussed above, the only treatment 
record from that facility showing an abnormal gait was in May 
2005. At the Veteran's next treatment, one month later, he had a 
normal gait and has consistently had a normal gait in treatment 
records at that facility from that time. The Veteran also had a 
normal gait during his October 2009 VA examination. During the 
Veteran's January 2005 VA examination there was no noted gait 
abnormality. Thus, the objective medical evidence of record, 
primarily from the same private treatment facility as where the 
private physician assistant works, do not support the factual 
basis for the June 2009 opinion. Accordingly, the Board 
considers the June 2009 nexus opinion to be based on an incorrect 
factual premise and, therefore, of no probative value here. See 
Reonal v. Brown, 5 Vet. App. 458 (1993); see also Kowalski v. 
Nicholson, 19 Vet. App. 171, 179 (2005) (holding that the Board 
may reject a medical opinion that is based on facts provided by 
the Veteran that have been found to be inaccurate or that are 
contradicted by other facts of record).

In short, the most probative medical evidence specifically rules 
out a relationship between the Veteran's current low back and 
right lower extremity varicose vein disabilities and his left 
knee disability. The Board places more weight on the opinion of 
the competent VA physician who provided the October 2009 
opinions, based on review of the medical records and claims file, 
interview of the Veteran, and physical examination, than on the 
June 2009 private physician assistant's opinion based on 
inaccurate facts and the Veteran's lay assertions that his 
current back and varicose vein disabilities are related to his 
left knee disability. As such, no finding of service connection 
is warranted for either claim.

In light of the foregoing, the Board finds that the preponderance 
of the evidence is against the claims, and the benefit of the 
doubt doctrine is not for application. See generally Gilbert v. 
Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F.3d 
1361 (Fed Cir. 2001). The appeal must therefore be denied.

ORDER

Entitlement to service connection for a low back disorder, to 
include lumbar disc herniation with osteoarthritis, is denied.

Entitlement to service connection for varicose veins of the right 
leg is denied.

____________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals

 Department of Veterans Affairs