# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-323

FRED A. DAVIS, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided       March 18, 2003 )

*Lewis C. Fichera*, of Sewell, New Jersey, was on the pleadings for the appellant.

*Tim S. McClain*, General Counsel; *Joan E. Moriarty*, Acting Assistant General Counsel; *Thomas A. McLaughlin*; and *Cristine D. Senseman*, all of Washington, D.C., were on the pleadings for the appellee.

Before IVERS, STEINBERG, and GREENE, *Judges*.

STEINBERG, *Judge*:  On February 12, 2001, the appellant, then pro se, sought review of a June 9, 2000, Board of Veterans' Appeals (BVA or Board) decision that dismissed as untimely an attempted appeal of a Department of Veterans Affairs (VA) regional office (RO) decision that had denied an original effective date earlier than February 12, 1993, for a 20% rating for his service-connected postoperative residuals of a hemorrhoidectomy.  *Fred A. Davis*, BVA 92-18390, at 19 (June 9, 2000).  The appellant's Notice of Appeal (NOA) was received by the Court 248 days after the date of the BVA decision.  The Secretary has filed a motion to dismiss this appeal for lack of jurisdiction; he asserts that the appellant has not filed a timely NOA.  For the reasons that follow, the Court will grant the Secretary's motion and dismiss the appeal for lack of jurisdiction.

## I. Relevant Background

The veteran, Fred A. Davis, had active U.S. military service from January 1961 to January 1964. *Davis*, BVA 92-18390, at 1. In December 1995, the Roanoke, Virginia, VARO received from the veteran a VA Form 9 (Substantive Appeal to the Board), on which he had listed his address as "302 W. Canal Street[,] Richmond, VA 23220". Preliminary Record (Prelim. R.) at 1. On a VA Form 20-8992, which was received by the RO on September 13, 1996, the veteran listed his then-current address as "15 W. Clay Street[,] Richmond, VA 23220". Prelim. R. at 3. That VA Form 20-8992, in a pre-printed portion, stated:

> [W]e emphasize to all those choosing direct deposit that . . . VA must be notified each time your mailing address changes, even if your payments are deposited directly to your bank account. Use the space at the bottom of this letter to report any change of address.
>
> ***You must keep . . . VA informed of any mailing address change*** in order to receive notice about benefits, about VA examinations, about scheduled VA medical treatment and ***to allow . . . VA to contact you promptly***.

*Ibid.* (emphasis added). On October 4, 1996, he filed with the RO a VA Form 572 ("Request for Change of Address/Cancellation of Direct Deposit"), listing his then-current address as "4013 North Avenue, Apt. 5[,] Richmond, VA 23222". Prelim. R. at 6. The RO received from the veteran on November 12, 1997, a completed "Direct Deposit Sign-Up Form" with an address of "210 Hospital St[reet,] Apt[.] 111[,] Richmond, Va 23219". Prelim. R. at 9-10. On November 22, 1999, the RO received from him a VA Form 9, which listed "210 Hospital Street[,] Richmond, VA 23219" as his address. Prelim. R. at 12-16. On June 9, 2000, the Board dismissed his appeal because the veteran had failed to file a timely Substantive Appeal in accordance with 38 U.S.C. § 7105(d)(3) and 38 C.F.R. § 20.302(b) (1999). *Davis*, BVA 92-18390, at 1, 3.

The preliminary record on appeal contains a partial copy of a VA envelope [hereinafter June 9, 2000, envelope] addressed to "Fred A. Davis[,] 210 Hospital Street[,] Apartment 111[,] Richmond, VA 23219", with a June 9, 2000, U.S. Postal Service (USPS) postmark. Prelim. R. at 18. Also on the envelope is a June 25, 2000, USPS sticker that states: "RETURN TO SENDER MOVED LEFT NO ADDRESS UNABLE TO FORWARD RETURN TO SENDER". Prelim. R. at 18. On July 6, 2000, the Director of the BVA Administrative Service sent to the RO a "Referral

of Correspondence" memorandum (with the veteran's VA claims file number on it) that noted that an enclosed BVA communication had been returned undelivered and that requested that the RO remail it ("with any necessary explanation") when the correct address was ascertained. Prelim. R. at 20. That memorandum also had a July 18, 2000, date-stamp on its reverse side. Prelim. R. at 21. On the June 9, 2000, envelope is an RO date-received stamp of July 17, 2000. Prelim. R. at 18.

On August 11, 2000, the RO received from the veteran a letter inquiring about his VA disability compensation checks and including the following address: "1701 Fairfield Way[,] Richmond, VA 23223". Prelim. R. at 23-25; Secretary's Aug. 2001 Memorandum (Mem.), Exhibit (Ex.) 1. On the July 6, 2000, BVA "Referral of Correspondence" memorandum is an August 29, 2000, handwritten note apparently made by "212A H. James" that stated: "MR suspense due to returned checks". Prelim. R. at 20. On the June 9, 2000, envelope is the following handwritten note, apparently also made by "212A H. James": "9/6/00 - remailed 6/9/00 BVA decision to: 1701 Fairfield Way[,] Richmond, VA 23223". Prelim. R. at 18. Also on September 6, 2000, the RO sent to the Richmond City Jail (addressed to 1701 Fairfield Way, Richmond, VA 23233) a request for information; in a September 7, 2000, response, received by the RO on September 12, 2000, a jail official noted that the veteran was incarcerated there (apparently since February 2, 2000) and that, although his length of sentence was six months, his scheduled release date was still pending. Secretary's Aug. 2001 Mem., Ex. 2-3. The RO received from the veteran on October 6, 2000, a VA Form 572 ("Request for Change of Address/Cancellation of Direct Deposit") that indicated that his new address was "P.O. Box 12393[,] Richmond, VA 23241". Prelim. R. at 27-28; Secretary's Aug. 2001 Mem., Ex. 4. On the June 9, 2000, envelope, the following further handwritten note, again apparently by "212A H. James", appears: "11/2/00 mail returned from 1701 Fairfield Way, remailed to P.O. Box 12393[,] Richmond[,] VA 23241". Prelim. R. at 18.

The Court received the appellant's NOA on February 12, 2001. On February 27, 2001, the Secretary transmitted to the Court a copy of a June 9, 2000, BVA decision. Attached to that BVA decision copy was a VA Form 4597 ("Appeals Notice"), describing the veteran's appellate rights; no date-stamp appears on that form. On March 7, 2001, the Court, through the Clerk of the Court, ordered the appellant, then pro se, to explain why the Court should not dismiss this appeal for lack of jurisdiction on the ground that he had not filed his NOA within the 120-day judicial-appeal period

3

after the mailing of the notice of the June 9, 2000, BVA decision. On March 8, 2001, the Secretary filed a motion to dismiss the appeal on the ground that the appellant's NOA was not timely filed.

On March 23, 2001, the Veterans Consortium Pro Bono Program filed (for the purpose of case evaluation) a motion to stay the proceedings in this case until April 13, 2001. The Court granted that stay motion on March 26, 2001. On March 27, 2001, Lewis C. Fichera, Esq., filed a notice of appearance on behalf of the appellant.

In a March 27, 2001, response to the Court's March 7, 2001, order, the appellant, then through counsel, makes two arguments that his NOA was timely. First, he contends that his NOA was filed within the 120-day judicial-appeal period, because the notice of the June 9, 2000, BVA decision was last mailed on November 3, 2000, and the Court received his NOA on February 12, 2001. Mar. 2001 Response (Resp.) at 1-2. He maintains that the Court should use the most recent BVA-mailing date because he has evidence that the previous BVA mailings were unsuccessful (several dates appear on the BVA decision he received) and that, if the Board mailed its decision more than once, the pro-claimant nature of the veterans benefits system would require that the most recent mailing be accepted as the one that initiated the appeal period. Mar. 2001 Resp. at 1-2. Second, he asserts that the Court should apply the doctrine of equitable tolling because he was incarcerated from February 2, 2000, until sometime in September 2000 and that his inability to receive his VA mail was not his fault. Mar. 2001 Resp. at 2, 4. In support of his arguments, the appellant has provided a copy of an envelope that he avers was used to mail the BVA decision and on which is a November 3, 2000, USPS postmark. Mar. 2001 Resp. at 6.

On April 4, 2001, the Court, through the Clerk of the Court, ordered the Secretary (1) to file a preliminary record evidencing that a copy of the June 9, 2000, BVA decision was mailed to both the appellant and his representative pursuant to the requirements of 38 U.S.C. § 7104(e) and (2) to address the appellant's assertions that the decision copy mailed to him contained more than one date. Apr. 4, 2001, Order. The Court also ordered the appellant to provide to the Court a copy of the BVA decision that he asserts was mailed to him on November 3, 2000. *Ibid.* On April 20, 2001, the appellant provided a copy of that BVA decision, on the first page of which appear three stamped dates: June 9, 2000; September 6, 2000; and November 2, 2000. The September 2000 date is crossed out and the word "Remailed:" is handwritten at a single location in front of and half-way

4

between the September and November 2000 dates. Also on the first page of that BVA decision is a July 5, 2000, date-received stamp of the "BVA-ADMIN TEAM 3".

On May 25, 2001, the Secretary filed a response to the Court's order and the preliminary record. The preliminary record contains an affidavit from the Director of the BVA Administrative Service. Prelim. R. at 30-32. The affidavit avers as follows: (1) A copy of the Board's June 9, 2000, decision was mailed on that date to the veteran at his then-most recent address at 210 Hospital Street, Apartment 111, Richmond, VA 23219; (2) the June 2000 mailing was returned to the Board as undeliverable by the USPS with the notation "Moved Left No Address; Unable to Forward; Return to Sender;" (3) on July 6, 2000, the Board forwarded a copy of the decision to the Roanoke RO with a request that the copy be remailed to the veteran after that RO had ascertained his correct address; (4) on September 6, 2000, that RO remailed the copy to him at 1701 Fairfield Way, Richmond, VA 23223 (which was the return address provided by the veteran on correspondence mailed to that RO on August 9, 2000); (5) the September 2000 mailing was returned to the RO; (6) on November 2, 2000, that RO remailed the copy to the veteran at P.O. Box 12393, Richmond, VA 23241 (the address provided by the veteran on a VA Form 20-572 ("Request for Change of Address/Cancellation of Direct Deposit") dated October 4, 2000, and received by that RO on October 6, 2000); (7) there is no indication in the veteran's claims file that the copy of the June 9, 2000, BVA decision that was remailed to the P.O. Box 12393 address was returned as undeliverable by the USPS; and (8) a copy of the June 2000 BVA decision was mailed on June 9, 2000, to the veteran's representative, the Virginia Department of Veterans Affairs. Prelim. R. at 31, 32. Further, the affidavit indicates that the original copy of the BVA decision retained by the Board administrative office and contained in the veteran's claims file has only a June 9, 2000, date-stamp on it and that the additional date-stamps of September 6, 2000, and November 2, 2000, were placed on the file copy retained by the RO at the time of each successive mailing by the RO. Prelim. R. at 32. The Secretary argues that a copy of the BVA decision was mailed to the veteran on June 9, 2000, pursuant to the requirements of 38 U.S.C. § 7104(e), at his most current address of record in his claims file and that the appellant's asserted nonreceipt of the Board's decision in a timely manner was due to his failure to provide VA with his correct address.

5

On July 18, 2001, the Court ordered the Secretary to file (1) an affidavit as to the return as undeliverable of the September 2000 mailing of the BVA decision and (2) a memorandum of law discussing the implications of this affidavit as to his arguments in this case. *Davis v. Principi*, No. 01-323, 2001 WL 880759, at *2 (Vet. App. July 18, 2001) (table). The Court also ordered the appellant to respond to the Secretary's affidavit and memorandum. *Ibid.* On August 16, 2001, the Secretary notified the Court that, other than the handwritten notes on the June 9, 2000, envelope, the appellant's claims file did not contain any evidence regarding the return of the September 2000 mailing. Aug. 2001 Mem. at 1. On September 4, 2001, the appellant responded and concedes that the Board mailed a copy of the June 9, 2000, BVA decision to the appellant on that date. Sept. 2001 Mem. at 1. He argues that there was no evidence that the Board mailed a copy of the June 9, 2000, BVA decision to his representative. Sept. 2001 Mem. at 4.

On December 6, 2001, the Court ordered the Secretary to file an additional memorandum of law discussing (1) to what extent the Secretary had conducted a search of the appellant's claims file for other possible and plausible addresses prior to the appellant's submission in August 2000 of an additional address and (2) assuming that the presumption of regularity had been rebutted in this case by the return of the Board's June 9, 2000, mailing of the BVA decision, from what date should the 120-day judicial-appeal period begin to run. *Davis v. Principi*, No. 01-323, 2001 WL 1646881, at *2 (Vet. App. Dec. 6, 2001) (table). The Court also ordered the appellant to respond. *Ibid.* On February 6, 2002, the Secretary responded with an affidavit from Holly James, the Veterans Service Representative who handled the veteran's claims file at the Roanoke RO during the latter half of 2000; she avers as follows: (1) She was trained, and it was her practice, to review the file to ensure that the current address was used when any correspondence from a claimant was returned as undeliverable, *see* VA ADJUDICATION PROCEDURE MANUAL 21-1 (MANUAL 21-1), part III, ¶ 1.04g (1997); (2) she would have remailed the June 2000 BVA decision had she found a more current address for the veteran in this case; and (3) from the notations in the claims file, she believes that she did remail a copy of the June 9, 2000, BVA decision to the veteran on both September 6 and November 2, 2000. Feb. 2002 Mem., Ex. 1. On February 25, 2002, the appellant responded through counsel; he asserts that, where notice of the BVA decision is returned as undeliverable, the judicial-appeal period is tolled until VA successfully mails that notice to the veteran at a current address and

that the judicial-appeal period in this case began on November 2, 2000, with the successful mailing of the notice. Feb. 2002 Mem. at 3-4. He also argues that VA failed to mail notice of the June 9, 2000, BVA decision to his representative. Feb. 2002 Mem. at 7.

## II. Analysis

### A. Judicial-Appeal Period

In the instant case, as the parties agree, (1) the Board made an unsuccessful attempt on June 9, 2000, to notify the veteran about its decision issued on that same day by mailing to him a copy of the decision at the Hospital Street address; (2) the RO made an unsuccessful attempt on September 6, 2000, by mailing a copy to him at the Fairfield Way address; and (3) the RO made a successful attempt by mailing a copy to him in early November 2000 at the P.O. Box 12393 address. Prelim. R. at 18. The veteran's filing of his NOA on February 12, 2001, was 248 days after the unsuccessful June 9, 2000, mailing; 156 days after the unsuccessful September 6, 2000, mailing; and 102 days after the successful November 2, 2000, mailing. The questions before the Court are therefore (1) whether, and if so when, the Board fulfilled the mailing requirements of section 7104(e) and (2) which VA mailing should be used to calculate whether the veteran's NOA was timely filed within the 120-day judicial-appeal period under 38 U.S.C. § 7266(a).

### 1. Applicable Statutory Provisions

This case turns on the interrelationships of various BVA obligations under sections 5104(a), 7104(e), and 7266 of title 38, U.S. Code. Those provisions provide:

#### § 5104. Decisions and notices of decisions

(a) In the case of a decision by the Secretary under section 511 of this title affecting the provision of benefits to a claimant, the Secretary shall, on a timely basis, provide to the claimant (and to the claimant's representative) notice of such decision. The notice shall include an explanation of the procedure for obtaining review of the decision.

. . . .

\* \* \* \*

7

## § 7104.  Jurisdiction of the Board

. . . .

(e)(1) After reaching a decision on a case, the Board shall promptly mail a copy of its written decision to the claimant at the last known address of the claimant.

(2) If the claimant has an authorized representative, the Board shall–

(A) mail a copy of its written decision to the authorized representative at the last known address of the authorized representative; or

(B) send a copy of its written decision to the authorized representative by any means reasonably likely to provide the authorized representative with a copy of the decision within the  same time a copy would be expected to reach the authorized representative if sent by first-class mail.

\* \* \* \*

## § 7266.  Notice of appeal

(a)(1) In order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans' Appeals, a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed pursuant to section 7104(e) of this title.

(2) An appellant shall file a notice of appeal under this section by delivering or mailing the notice to the Court.

(3) A notice of appeal shall be deemed to be received by the Court as follows:

(A) On the date of receipt by the Court, if the notice is delivered.

(B) On the date of the United States Postal Service postmark stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and is mailed.

(4) For a notice of appeal mailed to the Court to be deemed to be received under paragraph (3)(B) on a particular date, the United States Postal Service postmark on the cover in which the notice is posted must be legible. The Court shall determine the legibility of any such postmark and the Court's determination as to legibility shall be final and not subject to review by any other Court.

38 U.S.C. §§ 5104(a), 7104(e), 7266(a).

The ultimate burden of establishing jurisdiction rests with the appellant. *See McNutt v. G.M.A.C.*, 298 U.S. 178, 189 (1936); *Bethea v. Derwinski*, 2 Vet.App. 252, 255 (1992). Pursuant to 38 U.S.C. § 7266, in order for a claimant to obtain review of a BVA decision by this Court, that decision must be final and the person adversely affected by it generally must file a timely NOA with the Court. *See Bailey (Harold) v. West*, 160 F.3d 1360, 1363 (Fed. Cir. 1998) (en banc). *But see Santana-Venegas v. Principi*, 314 F.3d 1293, 1298 (Fed. Cir. 2002) (holding as matter of law that, where veteran misfiles NOA at RO where he filed his original claim but files that NOA within 120-day judicial-appeal period, that period is tolled until Court actually receives NOA).

To have been timely filed under 38 U.S.C. § 7266 and Rule 4 of this Court's Rules of Practice and Procedure, an NOA must generally have been received (or, in certain circumstances, be deemed received) by the Court "within 120 days after the date on which notice of the [BVA] decision is mailed pursuant to [38 U.S.C. § ]7104(e)". 38 U.S.C. § 7266(a); *see Cintron v. West*, 13 Vet.App. 251, 254 (1999); *Leonard v. West*, 12 Vet.App. 554, 555 (1999) (per curiam order); *see also* 38 U.S.C. § 7266(c)(2). *But see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Evans (Billy) v. West*, 12 Vet.App. 396, 399 (1999) (citing *Bailey (Harold)*, 160 F.3d at 1365, and other cases regarding equitable tolling of NOA-filing period under certain circumstances).

In order to fulfill the mailing requirements of section 7104(e), the Board must "promptly mail a copy of its written decision to the claimant at the last known address of the claimant." 38 U.S.C. § 7104(e)(1); *Thompson (Charles) v. Brown*, 8 Vet.App. 169, 179, *sua sponte recons. ordered on other grounds*, 8 Vet.App. 430 (1995), *reaff'd*, 9 Vet.App. 173 (1996) (per curiam order). In addition, "if the claimant has an authorized representative," the Board must also mail or send in some

other timely way a copy of the BVA decision to that "authorized representative at the last known address of the authorized representative". 38 U.S.C. § 7104(e)(2); *Thompson (Charles)*, 8 Vet.App. at 180.

## 2. Presumption of Regularity of Mailing

For purposes of determining whether an NOA is timely filed under section 7266(a) within the 120-day period from the Board's mailing of notice of its decision, the Court applies to the Board's mailing of a decision copy under section 7104(e) a "presumption of regularity" that the Secretary and the Board discharged their official duties by mailing the decision copy to the claimant and to the claimant's representative, if any, at each of their last known mailing addresses on the date on which the decision is issued. *Clark v. Principi*, 15 Vet.App. 61, 63 (2001); *Cross v. Brown*, 9 Vet.App. 18, 19 (1996); *Thompson (Charles)*, 8 Vet.App. at 180; *Ashley v. Derwinski*, 2 Vet.App. 307, 309 (1992) (*Ashley II*), *aff'g on recons.* 2 Vet.App. 62 (*Ashley I*); *see also* 38 U.S.C. §§ 7104(e), 7266(a). That presumption can be overcome only by "clear evidence to the effect that the BVA's 'regular' mailing practices are not regular or that they were not followed". *Ashley II*, *supra*. Evidence of nonreceipt of a BVA decision does not establish the "clear evidence" needed to rebut the presumption of regularity of the mailing. *Ibid.*; *cf. Chute v. Derwinski*, 1 Vet.App. 352, 353 (1991) (holding that presumption of regularity was rebutted where Secretary could not show that he had mailed notice of BVA decision and appellant's letters appeared to reflect that he was seeking information regarding status of BVA review, thus indicating that he had not received that notice).

This Court has held that the presumption of regularity of mailing has been rebutted where a copy of a BVA decision that is mailed to a claimant at his or her last known address is returned as undeliverable by the USPS and the claimant's claims file discloses other possible and plausible addresses that were available to the Secretary at the time of the BVA decision. *Cross*, 9 Vet.App. at 19. The Court notes that, although there is language in certain Court opinions that might suggest that the presumption is rebutted by evidence of only a "returned as undeliverable" mailing, those opinions do not establish a new basis for rebuttal of the presumption because there were in those cases alternate addresses for the claimant in the VA claims file at the time of the BVA decision. *Woods v. Gober*, 14 Vet.App. 214, 220-21 (2000); *Thompson (Charles)*, 8 Vet.App. at 178-79. The Court reiterates that in order to rebut the presumption under current caselaw the appellant must

10

establish **both** that the mailing was returned as undeliverable **and** that there were other possible and plausible addresses available to the Secretary at the time of the BVA decision. *See Woods*, *Thompson*, and *Cross*, all *supra*.

Once the presumption has been rebutted, the Secretary has the burden to show to the contrary -- that is, that the BVA decision was mailed in the appropriate manner. *See Ashley II*, 2 Vet.App. at 311. In order to carry his evidentiary burden when the BVA decision has been returned as undeliverable, the Secretary must establish that he thereafter attempted to remail notice of the BVA decision to the veteran at the alternative address(es) available to the Secretary at the time of the BVA decision. *See Cross*, 9 Vet.App. at 19; *accord Woods*, 14 Vet.App. at 221 (holding that, where presumption was rebutted, Secretary failed to carry his burden to show that decision was appropriately mailed to appellant because there was no evidence that decision was mailed to alternative address that was in file at time of decision). In any event, any defect in the mailing process may be cured by proof of actual receipt of the BVA decision by the appellant, "and the 120-day [judicial-appeal] period does not begin to run until the date on which that defect is cured by actual receipt." *Clark*, 15 Vet.App. at 63; *see Ashley II*, 2 Vet.App. at 311.

### B. Application to Facts of Case

### 1. Mailing to the Appellant's Representative

The appellant argues that the Board failed to mail a copy of the June 9, 2000, BVA decision to his representative as required by section 7266(a) and section 7104(e)(2). Sept. 2001 Mem. at 4; Feb. 2002 Mem. at 7. However, the appellant has provided no evidence to support rebuttal of the presumption that the Board made such a mailing on the date of the BVA decision. *See Thompson (Charles)*, 8 Vet.App. at 180. Accordingly, the Court holds that the presumption of regularity has not been rebutted as to the BVA mailing of notice to the appellant's representative.

### 2. Mailing to the Appellant

***a. Presumption of Regular Mailing.*** In the instant case, there is no dispute regarding the following circumstances: (1) The Board mailed the June 9, 2000, BVA decision to the appellant at the Hospital Street address on June 9, 2000; (2) that mailing was returned as undeliverable to the Board by the USPS; (3) there was no other address for the veteran in the claims file at the time of the BVA decision; and (4) the RO, at the request of the Board, searched the claims file for additional

addresses at some point after the Board in early July 2000 asked it to do so. The Secretary contends, and the Court agrees, that, based on this Court's section 7104(e) caselaw and the above facts, the presumption of regularity was not rebutted, because, although the June 9, 2000, mailing of the BVA decision was returned as undeliverable, there was no additional possible and plausible address in the claims file *at the time of the BVA decision*. *See Woods*, 14 Vet.App. at 220-21; *Cross*, 9 Vet.App. at 20; *Thompson (Charles)*, 8 Vet.App. at 178-79. In a "returned as undeliverable" case, once the Court determines that at the time of the BVA decision there was no additional address(es) in the claims file for VA to use to mail the BVA decision to the appellant, the Board is entitled to rely on the regularity of its mailing to the original address and the presumption of regularity has not been rebutted. *See Woods*, *Cross*, and *Thompson*, all *supra*. Accordingly, the Court holds that VA fulfilled the mailing requirements of section 7104(e) at the time of the first mailing on June 9, 2000.

   ***b. Equitable Tolling.*** The appellant asserts that the Court should apply the doctrine of equitable tolling because the appellant's inability to receive mail while he was incarcerated was not due to any fault or action on his part. Mar. 2001 Resp. at 2. Equitable tolling is available to toll the section 7266 judicial-appeal period under certain circumstances. *See Bailey (Harold)*, 160 F.3d at 1365. However, "principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect", *Irwin*, 498 U.S. at 96, and "a veteran who files an untimely [NOA] must nevertheless show that he 'exercised due diligence in preserving his legal rights.'" *Jaquay v. Principi*, 304 F.3d 1276, 1287 (Fed. Cir. 2002) (en banc) (quoting *Irwin*, 498 U.S. at 96).

   A "case does not involve a 'garden variety claim of excusable neglect' . . . [where] the appellant did all he was required to do in order to obtain the relevant information regarding the benefits that he sought." *Smith (Edward) v. Derwinski*, 2 Vet.App. 429, 435 (1992) (citation omitted); *see also Chastain v. West*, 13 Vet.App. 296, 299 (2000) (holding that "excusable neglect" in veterans benefits context is where late filing is veteran's fault). In regard to the presumption of regular mailing, "it is the burden of the veteran to keep . . . VA apprised of his whereabouts." *Hyson v. Brown*, 5 Vet.App. 262, 265 (1993); *see also* Prelim. R. at 3 (notifying appellant that he "must keep . . . VA informed of any mailing address change in order to receive notice about benefits . . . and to allow . . . VA to contact [him] promptly"). This Court has held in the appellant's favor where "the appellant had taken affirmative steps specifically to notify VA of his address change after the

12

file had been sent to the Board", even though the appellant had notified the RO instead of the Board. *Cross*, 9 Vet.App. at 20.

In this case, the veteran was in jail at the time of the BVA decision, but, as evidenced by his August 11, 2000, letter to the RO regarding his VA disability checks (Prelim. R. at 23-25), he knew how to communicate with VA and did so from jail. Hence, there is no indication that he was unable to carry out his *Hyson* duty to notify VA of his change of address, about which duty he was specifically informed in September 1996 (Prelim. R. at 3). Because the appellant failed to exercise due diligence in this regard, the Court rejects his equitable-tolling argument. *See Irwin*, 498 U.S. at 96.

*c. Extending the Court's Caselaw*. The appellant argues, in essence, that, irrespective of traditional equitable-tolling principles, the Court should extend the current caselaw to hold that, where VA has made more than one attempt to mail the BVA decision, the pro-claimant veterans benefits system, *see Bailey (Harold)*, 160 F.3d at 1365, requires that the 120-day judicial-appeal period be tolled until VA mails the decision to the correct, current address. *See* Mar. 2001 Resp. at 1-2. The appellant also appears to be arguing that in order for a claimant to receive the benefits of fair process, *see Austin v. Brown*, 6 Vet.App. 547, 551-52 (1994); *Thurber v. Brown*, 5 Vet.App. 119, 122-26 (1993), VA must "provide", 38 U.S.C. § 5104(a), to the claimant notice (in other words, the claimant must actually receive notice) of the start of the 120-day judicial-appeal period. *See also Sutton v. Brown*, 9 Vet.App. 553, 569-70 (1996) (discussing fair-process procedure for Board to provide notice of its intent to adjudicate case based on issue or evidence (and of intended reliance on that evidence to deny claim) not addressed by RO). Such an argument implicates the Board's section 5104(a) responsibility to "provide to the claimant (and to the claimant's representative) notice of [a BVA] decision", which notice "shall include an explanation of the procedure for obtaining review of the decision", 38 U.S.C. § 5104(a).

The section 5104(a) provisions require the Board to ensure that a copy of the BVA decision is provided to a claimant along with notice of the claimant's appellate rights. *See Thompson (Charles)*, 8 Vet.App. at 175-76; *see also* 38 C.F.R. § 3.103(b) (2002) (providing that "[c]laimants and their representatives are entitled to notice of any decision made by VA"). Hence, in order to accept the appellant's argument, the Court would have to hold that a failure of compliance with the

13

section 5104(a) duty tolls the running of the section 7266(a) judicial-appeal period. In *Ashley I*, this Court has already held that it does not. *Ashley I*, 2 Vet.App. at 65-66 (holding that it is proper ***mailing*** of notice of BVA decision under section 7104(e) that triggers section 7266(a) judicial-appeal period, not occurrence of notification or, in other words, actual receipt of notice of BVA decision, that does so). *But cf. Thompson (Charles)*, 8 Vet.App. at 176-77 (concluding that "section 5104(a)'s general command to provide certain types of notices is given content as to BVA decisions by section 7104(e)'s more specific command to provide copies of BVA decisions by 'mail'" and holding that presumption of mailing rebutted where Board sent notice to appellant at his address of record but did not also mail notice to another address of appellant that BVA had used immediately before issuing BVA decision).

In view of several relatively recent opinions of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit), which lend some support to the appellant's contentions here in terms of setting forth liberal bases for the application of equitable-tolling principles, we agree that we should reexamine our caselaw and proceed to do so.

Notwithstanding clear statutory and regulatory language, the Federal Circuit has concluded in several cases that NOAs have been timely filed based on post-*Irwin* equitable-tolling principles. Those Federal Circuit cases include: *Santana-Venegas*, 314 F.3d at 1298 (noting VA guidelines requiring timely assistance and timely response to correspondence sent to VA and holding "as a matter of law that a veteran who misfiles his or her [NOA] at the same VARO from which the claim originated within the 120-day judicial-appeal period of 38 U.S.C. § 7266, thereby actively pursues his or her judicial remedies, despite the defective filing, so as to toll the statute of limitations"); *Jaquay*, 304 F.3d at 1288-89 (noting VA guidelines requiring timely assistance and timely response to correspondence sent to VA and holding that equitable tolling applied where claimant had actively pursued judicial remedies during section 7266 appeal period by filing motion for BVA reconsideration at RO, even though claimant received specific notice that motion must be filed at Board); *Santoro v. Principi*, 274 F.3d 1366, 1370 (Fed. Cir. 2001) (holding that NOA addressed to Court but with incorrect zip code that caused it to be delivered to VA General Counsel rather than to this Court was "properly addressed" and thus, by implication, was timely filed under section 7266(c)(2), even though NOA and NOA cover were apparently not available); and *Linville*

14

*v. West*, 165 F.3d 1382, 1385-86 (Fed. Cir. 1999) (holding that, in keeping with *Rosler v. Derwinski*, 1 Vet.App. 241, 249 (1991), VA regulatory postmark rule, 38 C.F.R. § 20.1001(b), applied to motions for BVA reconsideration so as to toll section 7266 judicial-appeal period, even though under that regulation reconsideration motions generally may be filed at any time and under 38 C.F.R. § 20.305(a) VA's postmark rule applied only when document must be filed within certain time period).

Nevertheless, the tolling of the appeal period in this case would go beyond those Federal Circuit cases for two reasons. First, the Federal Circuit specifically found in *Santana-Venegas* and *Jaquay*, both *supra*, that the appellants had actively pursued their judicial remedies. *See Santana-Venegas*, 314 F.3d at 1298 (holding as matter of law that due diligence is satisfied where veteran misfiles NOA at RO where he filed his original claim but files that NOA within 120-day judicial-appeal period); *Jaquay*, 304 F.3d at 1288 (holding that due-diligence requirement is satisfied by filing motion for BVA reconsideration within judicial-appeal period, even though filing was made at RO instead of Board). In contrast, by failing to keep VA apprised of his current address, the appellant here, as we concluded in part II.B.2.b., above, did not act with the necessary due diligence. *See Hyson*, 5 Vet.App. at 265; Prelim. R. at 3.

Second, the Federal Circuit in *Linville*, *supra*, constructed an interpretation of a regulation that supported a liberal reading of the statute involved, and in *Santoro*, *supra*, the court used a USPS regulation to find that the appellant's error in using the wrong zip code on the envelope was not fatal to his equitable-tolling argument. In this case, however, there appears to be no principled way in which to interpret the language of sections 7104(e)(1) and 7266(a) to allow the appellant to control the length of the NOA-filing period by periodically submitting new addresses to VA. *Cf. Rosler*, 1 Vet.App. at 249 (noting that Court was cognizant of possibility that claimant could frustrate judicial review period by filing repetitive motions for BVA reconsideration). Furthermore, although recognizing the importance of section 5104(a) notice, *see Thompson (Charles)*, 8 Vet.App. at 176-77, the Court is not inclined to create a continuing – and possibly endless – VA duty to pursue ***the current address*** of a claimant, particularly in the face of the claimant's lack of due diligence in failing to notify VA of his changed address. *See Jaquay*, 304 F.3d at 1283 ("an appeal by a veteran of a BVA decision involves a waiver of sovereign immunity, which must be strictly construed").

Moreover, this case is unlike *Rosler*; there, the motion for BVA reconsideration raised questions of the Board's jurisdiction and whether there was any Board action for the Court to review, whereas here, there is no question whether the BVA decision is available for review but only whether the appellant has timely appealed that decision.

Hence, we cannot interpret the above discussed Federal Circuit cases as overruling *Ashley I*'s holding that the section 7266(a) judicial-appeal period does not "begin[] on the date a BVA decision is **received** by the claimant and the claimant's authorized representative, if any", *Ashley I*, *supra*, but instead begins when the Board promptly mails a copy of its decision to the claimant at his last known address pursuant to 38 U.S.C. § 7104(e)(1). *See* 38 U.S.C. § 7266(a). The Court notes that (1) nothing in this opinion alters VA's continuing duty to take all reasonable steps to make sure that a claimant actually receives notice pursuant to section 5104(a) and (2) the Board and the RO in this case met the requirements of that notice provision by continuing to mail the BVA decision copy to a new address each time one was discovered for the claimant (although a better record on appeal as to the second returned notice would have been helpful). The Court reaffirms its holding in *Ashley I* that the important VA duty under section 5104(a) to "provide" to a claimant notice of a decision and the claimant's appellate rights does not affect the tolling of the section 7266 judicial-appeal period. *See* 38 U.S.C. §§ 7104(e)(1), 7266(a); *Ashley I*, *supra*.

Accordingly, the Court holds that the first mailing to the veteran on June 9, 2000, which, as we stated in part II.B.2.b., above, fulfilled the mailing requirements of section 7104(e), should be used to calculate whether the veteran's NOA was timely filed within the 120-day judicial-appeal period under 38 U.S.C. § 7266(a) and that the appellant's February 12, 2001, NOA was therefore untimely as having been filed well beyond that 120-day period.

### III. Conclusion

Upon consideration of the parties' pleadings, the evidentiary record, and the foregoing analysis, the Court grants the Secretary's motion to dismiss for lack of jurisdiction.

APPEAL DISMISSED.

16