Citation Nr: 1513893 
Decision Date: 03/31/15 Archive Date: 04/03/15

DOCKET NO. 09-49 843 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

Entitlement to waiver of recovery of an overpayment of Department of Veterans Affairs (VA) compensation benefits in the amount of $14,303.20, to include the issue of whether the request for waiver was received in a timely manner.


REPRESENTATION

Appellant represented by: Douglas E. Sullivan, Attorney at Law


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

A. Barone, Counsel


INTRODUCTION

The Veteran served on active duty from June 1968 to August 1970. 

The issue of whether the request for waiver was received in a timely manner is before the Board of Veterans' Appeals (Board) on appeal from a May 2009 decision of the Debt Management Center in Fort Snelling, Minnesota. The statement of the case (SOC) and supplemental SOC in this matter have been issued by the regional office (RO) in Milwaukee, Wisconsin. The Board notes that jurisdiction of the Veteran's claims-file currently resides with the RO of Atlanta, Georgia.

In January 2015, the Veteran testified before a Veterans Law Judge (VLJ). A copy of the transcript has been associated with the claims file.

(The issues of (1) whether there was clear and unmistakable error (CUE) in a December 1983 rating decision in that it denied entitlement to service connection for headaches, (2) whether there was CUE in a December 1983 rating decision in that it failed to award service connection for a psychiatric disorder, (3) whether there was CUE in an April 1988 rating decision in that it denied entitlement to service connection for posttraumatic stress disorder (PTSD) and/or another psychiatric disorder, and (4) entitlement to service connection for heart disease, to include as due to herbicide exposure are all the subject of a separate Board decision.)

The Board notes that during appellate review of this case there has been resolution of some confusion regarding the Veteran's appointment of representation. A VA Form 21-22a dated in June 2010 appointed the Veteran's current attorney as his representative with express limitation of that representation to only the specific issues alleging CUE on appeal; a Veterans Service Organization remained the Veteran's representative for other matters. However, in August 2012, the Veteran filed another VA Form 21-22a appointing the same attorney as his representative for all issues before VA, with no limitation. The more recent August 2012 appointment had been accidentally mislabeled in the electronic claims file, but has now been correctly identified as establishing that the appointed attorney is the Veteran's representative for all matters currently on appeal. The representative in this matter is correctly identified on the title page of this decision.

As the Board determines, below, that the request for waiver must be considered to have been timely filed, the issue of waiver of recovery of an overpayment of VA compensation benefits in the amount of $14,303.20, on the merits, is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The initial letter notifying the Veteran of an overpayment of VA compensation benefits in the amount of $14,303.20 was mailed to him in December 2004; it is not shown to have been mailed to him at his address of record and the record as it now exists does not reflect a date that proper notice was mailed to the Veteran advising him of the existence of the overpayment and the time frame in which to request waiver of its recovery.

2. In the absence of evidence to the contrary, the Veteran's request for waiver of the $14,303.20 overpayment at issue, received by VA on May 8, 2009, is considered to have been timely filed.


CONCLUSION OF LAW

The Veteran's request for waiver of recovery of an overpayment of VA compensation benefits in the amount of $14,303.20 was timely filed. 38 U.S.C.A. § 5302(a) (West 2014); 38 C.F.R. § 1.963(b) (2014).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

Preliminary Matters

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014). However, the VCAA does not apply to all types of claims. For example, in Barger v. Principi, 16 Vet. App. 132 (2002), the United States Court of Appeals for Veterans Claims (Court) held that the VCAA, with its expanded duties, is not applicable to cases involving the waiver of recovery of overpayment claims, pointing out that the statute at issue in such cases was not found in Title 38, United States Code, Chapter 51 (i.e., the laws changed by VCAA). Similarly, the statute at issue in this appeal is not found in Chapter 51. In any event, as this decision grants the benefit sought, no further discussion of the VCAA is necessary.

Timeliness of Waiver Application

Under the applicable regulations, a request for waiver of a debt, other than for loan guaranty, shall only be considered if made within 180 days following the date of a notice of the indebtedness to the debtor. The 180-day period may be extended if the individual requesting waiver demonstrates to the Chairperson of the Committee that, as a result of an error by either VA or the postal authorities, or due to other circumstances beyond the debtor's control, there was a delay in such individual's receipt of the notification of indebtedness beyond the time customarily required for mailing, including forwarding. If the requester does substantiate that there was such a delay in the receipt of the notice of indebtedness, the Chairperson shall direct that the 180-day period be computed from the date of the requester's actual receipt of the notice of indebtedness. 38 C.F.R. § 1.963(b); see also 38 U.S.C.A. § 5302(a) (West 2014).

For the purposes of this analysis, "notice" means written notice sent to a claimant at his or her latest address of record. See 38 C.F.R. § 3.1(q).

To determine whether any waiver request by the Veteran was timely, the Board must determine when the Veteran was properly provided notice of the indebtedness to the Veteran.

In September 2004, the RO in Indianapolis, Indiana attempted to notify the Veteran by letter of a proposal to reduce his monthly VA compensation benefits based upon his status as an incarcerated felon at that time (a status change that the Veteran had not reported to VA). The letter was sent to an address in Indianapolis, Indiana. However, the RO was having significant difficulty locating the Veteran at that time. A July 2004 item of "Returned Mail" is filed in the Veteran's claims-file (although the details of this returned item are not made entirely clear by the contents available in the claims-file). Moreover, the RO had recently suspended the Veteran's VA benefit payments due to the fact that the benefit checks mailed to the Indianapolis address had been returned as undeliverable. The letter attempting to notify the Veteran of the suspended status of his payments was itself sent to the Indianapolis address and returned to the RO as undeliverable on the same day that the RO sent the letter attempting to notify the Veteran of the reduction in entitlement due to his incarcerated status.

The September 2004 notice regarding the reduction of the amount of the Veteran's entitlement to VA benefits due to incarceration was sent to the same Indianapolis address and was returned as undeliverable in October 2004. In December 2004, the RO issued a letter finalizing the proposed reduction and notifying the Veteran of his appellate rights; the letter was mailed to the same Indianapolis address as the prior correspondence discussed above and was returned as undeliverable later that month.

Later still in December 2004, the VA Debt Management Center in St. Paul, Minnesota attempted to notify the Veteran of the associated overpayment indebtedness in the amount of $14,303.20 through a letter sent to the same Indianapolis address. This letter refers to an enclosed attachment intended to provide notice of how to request a waiver of the debt or an oral hearing (the attachment is not contained in the file-copy of this correspondence). The claims file does not contain specific documentation of a return of the December 2004 letter from the Debt Management Center as undeliverable. The Board notes, however, that the information of record featuring a number of proximate instances of mail to that address being returned as undeliverable strongly suggests that the Indianapolis address was no longer a valid address for delivery of mail to the Veteran; it appears only reasonable to consider that the Debt Management Center letter, like the other correspondence from around that time sent to the same address, was returned as undeliverable (with such outcome not being documented in the claims-file by the Debt Management Center).

To determine whether the Veteran's request for a waiver of recovery of the overpayment was timely, the Board must determine whether notice to the Veteran of the pertinent determination was properly accomplished more than 180 days prior to the Veteran's May 2009 request for the waiver. The attempt to provide such notice to the Veteran in December 2004 may constitute proper accomplishment of such notice if the written notice was sent to the Veteran at his latest address of record. See 38 C.F.R. § 3.1(q). However, the Board finds that careful review of the record reveals that the Indianapolis address to which pertinent VA correspondence and notice was sent in late 2004 does not appear to be the Veteran's latest address of record at the time.

The record reveals that the RO undertook some effort to attempt to locate the Veteran in 2004, prior to the mailing of the pertinent correspondence and notice discussed above. It is noteworthy that during the period that the RO struggled to make contact with the Veteran (finding that benefit checks and VA correspondence were returned as undeliverable from his defunct Indianapolis address), the Veteran had neither provided VA with notice that he had been incarcerated in 2003 nor provided VA with a new valid mailing address. VA's duty to assist a veteran is not a one-way street. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). It is the responsibility of veterans to cooperate with VA. See Olson v. Principi, 3 Vet. App. 480, 483 (1992).

However, it appears that the RO's efforts to locate a valid mailing address for the Veteran yielded a result in July 2004 that was not utilized in the subsequent efforts to provide notice to him later that year. Significantly, the claims-file contains documentation from July 2004 presenting the result of an "Inquiry" to the Social Security Administration (SSA) that produced a single address of record for the Veteran in Birmingham, Alabama. The address was indicated to be in the name of the Veteran's spouse, but expressly noted that she was receiving mail "for" the Veteran (the address was presented as associated with "[Spouse's full name] for [Veteran's full name]"). As this address was provided by SSA in response to an inquiry for the Veteran's address based upon his Social Security number at the time, it is reasonable to consider this address to be a valid address for the Veteran at that time. The Board also observes that the same Birmingham, Alabama address was included on a July 2004 report of addresses obtained in a separate report from a website (debtordiscovery.com) documented in the claims-file.

Considering that the Indianapolis address the RO had been using to attempt to contact the Veteran had repeatedly been demonstrated to have become undeliverable and obsolete, and as the claims-file documented that an address in Birmingham, Alabama was provided by SSA as the Veteran's current address, it is not clear to the Board what reason the RO may have had not to attempt to contact the Veteran through the Birmingham address when it was struggling to make contact with him at the end of 2004. The Board recognizes that the RO clearly made an effort to track down the Veteran's valid address, and those efforts may have yielded information that revealed a reason not to use the Birmingham address; however, the Board is unable to find a clear explanation in its review of the available documentation of record. Accordingly, it the Board finds it would be difficult to conclude that the mailing of pertinent notice to the Veteran's known-to-be-defunct Indianapolis address in December 2004 constituted written notice to his latest address of record when a different address for the Veteran was provided by the SSA in July 2004.

The Board further notes that the Court has held that where VA sent notice to a veteran at his last address of record, and that notice was returned as undeliverable, VA has a duty to ascertain by a "review of the claims file" whether there was another "possible and plausible" address of record for the veteran. Woods v. Gober, 14 Vet. App. 214, 220-21 (2000).

The evidence associated with the RO's attempts to mail items to the Veteran at the Indianapolis address around that time appears to well establish that the address was invalid by that time (mail was repeatedly being returned as undeliverable) such that it is only reasonable to conclude that the Debt Management Center's own attempt to mail notice to that same address in December 2004 was also undeliverable (although not specifically documented in the claims-file).

The Court has ruled that there is a rebuttable "presumption of administrative regularity" under which it is presumed that government officials have properly discharged their official duties, including mailing notices. See Clark v. Principi, 15 Vet. App. 61, 63 (2001). The presumption of regularity with regard to the regular mailing of notice attaches if VA mails notice to the last address of record. See Mindenhall v. Brown, 7 Vet. App. 271, 274(1994).

Even in cases where the presumption of administrative regularity were to attach (where the written notice was mailed to the last address of record), the presumption will be rebutted by "clear evidence" that both (1) the mailing was returned as undeliverable, and (2) there were other possible and plausible addresses that could have been used to contact him. See Davis v. Principi, 17 Vet. App. 29 (2003).

In Woods v. Gober, 14 Vet. App. 214, 220-21 (2000), the Court held that where the RO sends a veteran notice of a decision, and such notice is returned as undeliverable, the presumption of regularity is rebutted, and the burden is shifted to the RO to establish that it reviewed the claims file to ascertain whether there are other possible and plausible addresses for the veteran.

In order to carry the evidentiary burden under the presumption of regularity when a decision has been returned as undeliverable, VA must establish that it thereafter attempted to re-mail notice of the decision to the veteran at the alternative address or addresses available to VA at the time of the decision. Davis v. Principi, 17 Vet. App. 29 (2003).

In this case, the documentation of record (1) does not allow the Board to conclude that the December 2004 notice of the creation of overpayment indebtedness was sent to an address that was the Veteran's last address of record, as the SSA had already provided a new address for the Veteran to the RO, and (2) fairly clearly establishes that all mail sent to the Indianapolis address to which the December 2004 notice was sent was being returned as undeliverable at that time such that any presumption of administrative regularity must be considered rebutted and the burden shifted to the RO to fulfill a duty to investigate possible and plausible alternative addresses and attempt to re-mail notice to indicated alternative addresses.

Essentially, then, the Board is unable to conclude that the notice of the December 2004 creation of the $14,303.20 overpayment indebtedness was adequately provided to the Veteran more than 180 days prior to his May 2009 request for waiver of recovery of that debt. There is no evidence establishing that the Veteran otherwise actually received the December 2004 notice, nor is there an indication that notice of the determination was otherwise adequately provided to the Veteran. Accordingly, the Board finds no sufficient basis for finding untimely the Veteran's request for a waiver of recovery of the $14,303.20 debt announced in the December 2004 determination.

The Board observes that the record does not show when actual notice of the overpayment was provided to the appellant, but he asserts that he did not receive VA's December 2004 correspondence and nothing in the record demonstrates otherwise. To that end, the date of the event triggering the start of the 180-day period to request waiver remains unknown, and on the basis of the facts shown by the record presented for appellate review, the timeliness of the Veteran's waiver request must be conceded. To that extent, alone, the appeal is allowed.


ORDER

The Veteran's May 2009 claim for waiver of recovery of an overpayment of VA compensation benefits in the amount of $14,303.20 was not untimely. To this extent, the appeal is granted.


REMAND

The Veteran's request for a waiver of recovery of the $14,303.20 overpayment debt has been considered by the AOJ only to the extent of the AOJ concluding that the request was not timely. As discussed above, the Board has been unable to conclude that the Veteran's request may be deemed untimely; adjudication of the request for waiver must therefore proceed to consideration of the merits. Given the Board's decision on the timeliness issue regarding the Veteran's request for waiver of recovery of a $14,303.20 overpayment debt, the AOJ's Committee on Waivers and Compromises must now consider the merits of the waiver request considering the facts of the case. During the processing of this remand, the AOJ shall have the opportunity to complete any needed additional development, such as requesting that the appellant submit an updated financial status report.

The matter is further complicated, however, by the fact that the Veteran's request for a waiver has been accompanied by contentions that appear to challenge the validity of the underlying debt itself. The Veteran's August 2009 statement explaining his objection to recovery of the debt includes his contention that: "My spouse could have apportioned for the money while the Veteran (I) was incarcerated and no one told me this. I don't owe very much or no money to the DMC/VA." He continues: "The VA never told me my wife; who was paying the house payments and bills with the money, had to request an apportionment." The Veteran explained that he "has requested the waiver when he could and the VA should review the case that if an apportionment was requested would the Vet have a debt."

Before a decision can be made on whether the Veteran is entitled to a waiver of recovery of the overpayment, it must be determined whether or not the determination of the existence of the overpayment was legally valid. See Schaper v. Derwinski, 1 Vet. App. 430 (1991) (where the Court held that it is improper ("arbitrary and capricious and an abuse of discretion") to adjudicate an application for waiver without first determining the lawfulness of the debt asserted). In Schaper, the Court essentially held that appellate review of a waiver application cannot properly proceed before initial adjudication has addressed any challenge to the legal validity of the creation of the debt.

In this case, the Board finds that the Veteran has essentially challenged the legal validity of the creation of the debt in controversy. The matter is complicated, however, by some uncertainty with regard to the procedural status of these contentions. The Board's analysis of the timeliness of the request for waiver, above, necessarily featured a finding concerning whether the Indianapolis address to which the pertinent notice of December 2004 (creating the overpayment) was sent was the Veteran's last address of record at that time or was otherwise adequate for the purposes of establishing that VA adequately provided notice to the Veteran. The Board concluded (1) that the Indianapolis address used by VA in December 2004 was not the Veteran's last address of record at that time, and (2) that the fact that mail sent to that address was being returned as undeliverable raised a duty for the RO to investigate possible and alternative addresses. The Board's analysis above has discussed that the same Indianapolis address was used for mailing other pertinent notice in September 2004 (proposing the reduction of benefits and instructing the Veteran on his opportunity to challenge the reduction) and December 2004 (finalizing the reduction benefits), that the notices were returned as undeliverable, and that a possible and plausible new address of record for the Veteran had been received from SSA in July 2004.

The Board would be remiss if it were not to acknowledge that those findings in the Board decision, above, may implicate the adequacy of some of the other pertinent notice mailed to the Veteran's defunct Indianapolis address in September 2004 and December 2004 concerning the determinations pertinent to the creation of the overpayment indebtedness. The matter of determining whether the Veteran now may or may not be considered to have a pending timely challenge or disagreement pertaining to the validity of the $14,303.20 debt created in December 2004 should be addressed and resolved with a formal determination by the AOJ in connection with the AOJ's processing of this remand. Such a determination is necessary before the AOJ or the Board may properly proceed with review of the application for waiver of that same debt.

Accordingly, the case is REMANDED for the following action:

1. The AOJ should request the appellant to submit an updated financial status report, VA Form 5655.

2. The AOJ should adjudicate the threshold issue of whether the $14,303.20 overpayment of VA compensation benefits is valid. This adjudication should consider whether the Veteran currently has pending a timely filed challenge or disagreement concerning the validity of the $14,303.20 overpayment (given the circumstances described in the paragraphs above regarding the fact that notices to the Veteran in September 2004 and December 2004 were apparently not mailed to his last address of record at that time). The Veteran should be notified that the AOJ's determination on the question may be appealed to the Board (whether denied on a basis on timeliness of filing or on the merits). The AOJ should cite to the pertinent laws and regulations that support its determination on the timeliness of any filing as well as with regard to the validity of the debt.

3. After the above development is completed, the AOJ should review the claims file and readjudicate the claim for waiver of recovery of an overpayment of nonservice-connected pension benefits in the amount of $14,303.20, either in whole or in part, explaining with clarity the basis for the decision. If the benefit sought remains denied, the AOJ must furnish the Veteran and his representative an appropriate supplemental SOC and return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
M. C. Graham
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs