﻿Citation Nr: AXXXXXXXX
Decision Date: 06/16/20 Archive Date: 06/16/20

DOCKET NO. 191030-40378
DATE: June 16, 2020

ORDER

Entitlement to service connection for a neck disability is denied.

Entitlement to an initial rating of 50 percent, but no higher, for adjustment disorder with mixed anxiety and depressed mood is granted.

FINDINGS OF FACT

1. The preponderance of the evidence is against finding that the Veteran’s current neck disability is at least as likely as not causally related to his service or an incident of service origin.

2. The Veteran’s adjustment disorder with mixed anxiety and depressed mood has been manifested by symptoms productive of functional impairment comparable to occupational and social impairment with reduced reliability and productivity.

CONCLUSIONS OF LAW

1. The criteria for service connection for a neck disability have not been met. 38 U.S.C. §§ 1110, 5103, 5107 (2012); 38 C.F.R. § 3.303 (2019).

2. The criteria for entitlement to an initial rating of 50 percent, but no higher, for adjustment disorder with mixed anxiety and depressed mood have been met. 38 U.S.C. § 1155, 5103, 5107 (2012); 38 C.F.R. § 4.126, 4.130, Diagnostic Code 9400 (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. This decision has been written consistent with the new AMA framework.

The Veteran served on active duty from November 2012 to November 2018. 

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a September 2019 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO).

The Veteran selected the Direct Review lane without a Board hearing when he opted in to the AMA review system by submitting a VA Form 10182 (Decision Review Request: Board (Notice of Disagreement)) in October 2019. Accordingly, the Board will consider the evidence of record at the time of the September 2019 rating decision.

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004).

1. Entitlement to service connection for a neck disability.

The Veteran contends that he suffers from neck pain and dysfunction secondary to his lower back which began during active duty. He has not reported any specific incident, event, or disease for the claimed neck condition during service.

As an initial matter, the medical evidence shows a current diagnosis of neck pain and dysfunction, as evidenced by a February 2019 private consultation and examination report. See Degmetich v. Brown, 104 F.3d 1328, 1333 (Fed. Cir. 1997) (holding that the existence of a current disability is the cornerstone of a claim for VA disability compensation).

To the extent that there is no specifically diagnosed neck disorder, the Board will not require such a diagnosis. The medical evidence of record shows a diagnosis of neck pain and dysfunction. The United States Court of Appeals for the Federal Circuit has stated that “‘disability’ in [38 U.S.C] § 1110 refers to the functional impairment of earning capacity.” See Saunders v. Wilkie, 886 F.3d 1356 (2018). It was also stated in that case that “pain in the absence of a presently-diagnosed condition can cause functional impairment.” It was additionally stated in Saunders that “to establish a disability, the veteran’s pain must amount to a functional impairment. As such, and consistent with the holding in Saunders, the Board finds that pain alone can constitute disability and the requirement of a current disability has been met.

However, the preponderance of the evidence is against finding that it began during active service, or is otherwise related to an in-service injury, event, or disease. 38 U.S.C. §§ 1110,, 5107(b) (2012); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a), (d) (2019).

Service treatment records are silent for any neck condition. There is also no objective evidence of neck pain until approximately a year after the Veteran’s separation from active duty in February 2018. Ultimately, the Veteran had not reported a continuity of any neck symptoms since service or any incident, event, or disease during service that could be related to his current neck symptoms. 

On a February 2019 report of consultation and examination, a private chiropractor stated that the Veteran suffers from neck pain and dysfunction secondary to his lower back which began during active duty. The chiropractor also provided an opinion that “[i]t is more likely than not that the condition is directly and causally related to the Veteran’s military service.” The Veteran is in fact service connected for his thoracolumbar strain and degenerative disease of the lumbar spine with L5-S1 disc herniation. However, the Board affords no probative value to the February 2019 private medical opinion because the private chiropractor provided no rationale for his opinion. See generally Miller v. West, 11 Vet. App. 345, 348 (1998) (a bare conclusion, even one reached by a health care professional, is not probative without an underlying rationale); see also Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) (a medical examination report must contain not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two); Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning). Further here is no indication that the chiropractor physically examined the Veteran or reviewed pertinent medical evidence in the claims file.

The Veteran was scheduled for a VA examination for his neck on July 9, 2019. The Veteran failed to appear for the examination. The record reflects that the RO spoke to the Veteran on July 11, 2019 and he declined scheduling of another examination; he stated he would be leaving for a new job training on July 20, 2019 and he was advised to contact the RO when he became available. In correspondence dated August 2019, the RO notified that the Veteran should reschedule the examination at a later date or submit a privately prepared Disability Benefits Questionnaire (DBQ) in lieu of the VA examination, which was provided to the Veteran along with the notification letter.

Further, the September 2019 rating decision informed the Veteran of the VA’s attempt to schedule him for an examination and informed him that his claim was being denied because he had not attended the examination. The rating decision also informed the Veteran of the consequences for failure to report to examinations under 38 C.F.R. § 3.655 (failure to report for an examination will cause a claim to be rated based on the evidence of record). To date, no communication has been received from the Veteran regarding rescheduling examination or good cause for the lack of response.

The Veteran failed to appear for his examination and has not presented good cause for the failure to communicate with VA in rescheduling the examination; in accordance with the remand instructions. The file clearly shows the AOJ’s attempts to contact the Veteran. The Board finds that good cause has not been shown for the Veteran’s failure to respond to VA letters. There is also no indication that the Veteran did not receive the notifications, and he has not requested the VA examinations be rescheduled. Given the AOJ actions and the Veteran’s choice not to submit to the VA examination, the Board finds the VA has no remaining duty regarding medical examination and opinion in conjunction with this claim. Although VA has a duty to assist the Veteran in substantiating his claims, that duty is not a one-way street and it is important that he make efforts to assist VA in gathering evidence relevant to his claim. Woods v. Gober, 14 Vet. App. 214, 224 (2000); see also Hurd v. West, 13 Vet. App. 449, 452 (2000).

Under 38 C.F.R. § 3.655(a), when entitlement to a benefit cannot be established without a current VA examination or reexamination and a claimant, without good cause, fails to report for such examination or reexamination, action shall be taken in accordance with 38 C.F.R. § 3.655(b) or (c) as appropriate. When a claimant fails to report for an examination scheduled in conjunction with an original compensation claim, the claim shall be rated based on the evidence of record. 38 C.F.R. § 3.655(b).

Ultimately, the current record contains no probative evidence of a nexus between the Veteran’s military service and his neck disability. The Board acknowledges that the Veteran was competent to testify as to observable symptoms of neck pain, but finds that as a lay person, he did not have the expertise to link the current disability to his service or a service-connected disability. See Jandreau, 492 F.3d at 1376-1377; Buchanan, 451 F.3d at 1336. 

Accordingly, the Board concludes that the weight of the evidence is against the Veteran’s claim of service connection for a neck disability. As the preponderance of the evidence is against the claim, the benefit-of-the doubt standard of proof does not apply. 38 U.S.C. § 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Increased Rating

Disability ratings are determined by the application of the VA’s Schedule for Rating Disabilities (Rating Schedule), which is based on the average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155 (2012); 38 C.F.R. Part 4 (2019). Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings sufficient to identify the disease and the resulting disability and above all, coordination of the rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21 (2019).

Evaluation of a service-connected disability requires a review of a veteran’s medical history with regard to that disorder. However, the primary concern in a claim for an increased evaluation for service-connected disability is the present level of disability. While the entire recorded history of a disability is important for more accurate evaluations, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55, 58 (1994).

Additionally, in determining the present level of a disability for any increased rating claim, the Board must consider the application of staged ratings. See Fenderson v. West, 12 Vet. App. 119, 126 (1999). In other words, where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibited diverse symptoms meeting the criteria for different ratings during the course of the appeal, the assignment of staged ratings would be necessary. 

2. Entitlement an initial rating in excess of 30 percent for adjustment disorder with mixed anxiety and depressed mood.

Service connection for adjustment disorder with mixed anxiety and depressed mood was established by the September 2019 rating decision, which assigned an initial rating of 30 percent from November 27, 2018, under the General Rating Formula for Mental Disorders, 38 C.F.R. § 4.130, Diagnostic Code 9400.

Under the General Rating Formula, a 30 percent rating is warranted when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130, Diagnostic Code 9413.

A 50 percent rating is warranted when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent rating is warranted when there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. Id.

The maximum schedular rating of 100 percent is warranted when there is total occupational and social impairment due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation or own name. Id.

In addition, when evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the lengths of remissions, and the Veteran’s capacity for adjustment during periods of remission. 38 C.F.R. § 4.126(a) (2019). The rating agency shall assign a rating based on all evidence of record that bears on occupational and social impairment rather than solely on the examiner’s assessment of the level of disability at the moment of the examination. Id. However, when evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment but shall not assign a rating on the basis of social impairment. 38 C.F.R. § 4.126(b) (2019).

When determining the appropriate disability rating to assign, the Board’s primary consideration is a Veteran’s symptoms, but it must also make findings as to how those symptoms impact a Veteran’s occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013); Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Because the use of the term “such as” in the rating criteria demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, the Board need not find the presence of all, most, or even some, of the enumerated symptoms to award a specific rating. Mauerhan, 16 Vet. App. at 442; see also Sellers v. Principi, 372 F.3d 1318, 1326-27 (Fed. Cir. 2004). Nevertheless, all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that the Veteran’s impairment must be “due to” those symptoms. A veteran may only qualify for a given disability by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio, 713 F.3d at 118.

In connection with his claim, the Veteran was afforded a VA examination in February 2019. The diagnoses were generalized anxiety disorder and other specified depressive disorder. It was noted that the Veteran’s symptoms of depression and anxiety, as likely as not, overlap with regards to insomnia, concentration difficulties, and fatigue, as a result of which they could not be distinguished from one another. The examiner found that the Veteran had occupational and social impairment with reduced reliability and productivity. The Veteran’s symptoms included anxiety, chronic sleep impairment, circumstantial speech, disturbances of motivation and mood, and difficulty in establishing and maintaining effective work and social relationships. The Veteran reported anhedonia, social isolation, and insomnia. He also described a pattern of excessive anxiety and worry, associated with feelings of fatigue, troubles with concentration, irritability, muscle tension and sleep disturbances. He was capable of managing financial affairs. On mental status examination, his impulse control was within normal limits. The Veteran’s speech was normal; his form of thought was remarkable for circumstantiality; and his thought content was within normal limits, with no apparent suicidality, homicidality, or perceptual abnormalities. He stated his mood was okay and his affect was normal and stable during the interview. He was oriented to all spheres.

The Veteran underwent another VA examination in June 2019. The diagnosis was adjustment disorder with mixed anxiety and depressed mood. The examiner found that a mental condition has been formally diagnosed but symptoms are not severe enough either to interfere with occupational and social functioning or to require continuous medication. The Veteran reported that he had been married for two years and described his relationship as “good.” However, he stated that it was strained after the first two years, because “I kind of keep to myself.” He resided with his wife, his brother and sister-in-law, parents, and two younger sisters. He indicated that he had two close friends from the military and communicated with them every other day. His leisure activities included video games and playing soccer. The Veteran stated he had not been employed since his military discharge but planned to attend Federal Aviation Administration (FAA) academy. Currently, he did not receive mental health treatment and was not prescribed psychotropic medication. He reported that his symptoms included social isolation, mild irritability, sleep impairment, mild depressed mood, and occasional anxiety regarding living situation and employment. The examiner noted the Veteran’s symptoms of depressed mood, anxiety, and chronic sleep impairment. On behavioral observations, the Veteran was fully oriented and neatly dressed and groomed. His speech, thought content/process, and psychomotor activity were within normal limits; his attitude was polite and cooperative; and his judgment and insight were adequate. He denied hallucinations, delusion, and suicidal or homicidal ideation. He was capable of managing his financial affairs.

By applying the Veteran’s psychiatric symptomatology to the rating criteria described above, the Board finds that his total disability picture most closely approximates the criteria for a 50 percent rating during the entire rating period on appeal.

In this regard, the Board determines that the Veteran’s psychiatric disability has been productive of symptomatology resulting in functional impairment comparable to occupational and social impairment with reduced reliability and productivity, without more severe manifestations that more nearly approximate functional impairment comparable to occupational and social impairment with deficiencies in most areas or total occupational and social impairment.

The Veteran’s total disability picture does not rise to the severity required for a 70 percent or higher rating. In this regard, the Board finds that occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, has not been shown. 

In this regard, the Veteran’s adjustment disorder has impacted his social functioning due to limited social interaction and social avoidance. Lay statements from the Veteran and his family, as well the medical evidence, reflect that he has tendency to isolate himself socially and has difficulty to be around other people. The Board finds the lay statements to be competent and credible evidence as to symptoms relating to his mental condition. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a lay person is competent to report on that of which he or she has personal knowledge); Barr v. Nicholson, 21 Vet. App. 303, 309 (2007). However, the evidence also shows that the Veteran has a stable family and social relationships. 

While the clinical findings of record describe experiences, thoughts, and emotions due to adjustment disorder that had noticeable impact on the Veteran’s social relationships, the evidence, overall shows that he was able to function well in his daily activities. In other words, the Veteran’s tendency for social isolation suggests difficulty in establishing and maintaining effective work and social relationships with reduced reliability and productivity, but not occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, and mood, as is required for the next higher rating of 70 percent. See Bowling v. Principi, 15 Vet. App. 1, 11 (2001).

Regarding the Veteran’s occupational functioning, the Board notes that total occupational impairment due to adjustment disorder has not been shown. As to occupational history, the record reflects that the Veteran has not worked since his separation from service in 2018 and he has been planning to attend FAA academy. The VA examinations of record, however, indicate that the Veteran has been capable of managing his financial affairs and he did not exhibit significant impairment of his usual daily activities, although he experienced occasional impairment because of symptoms of adjustment disorder. After reviewing the clinical findings at the VA examinations, the Veteran’s presentation appears to be consistent with occupational and social impairment with occasional decrease in work efficiency and intermittent inability to perform occupational tasks.

The Board also finds it significant that no abnormalities were found with regard to the Veteran’s thought processes, speech, and communication. He was capable of managing his financial affairs. The record consistently shows that his speech and thought process were normal, and his judgment and insight were adequate. He was fully oriented and there were no delusions or hallucinations. Mental status examination indicated that there was no obvious gross impairment in orientation and attention. Thus, deficiencies in the areas of judgment or thinking are not shown.

Other symptoms demonstrative of the level of functional impairment required for a higher 70 percent rating were neither complained of nor observed by the examiners, including suicidal ideation, obsessional rituals, illogical, obscure, or irrelevant speech, impaired impulse control, or periods of violence. The Veteran had not been shown to have symptoms equivalent in nature or severity to the criteria required for a higher rating. The record shows the Veteran’s disability was found to be consistently manifested by the symptoms of social isolation, depressed mood, anxiety, chronic sleep impairment, irritability, disturbances of motivation and mood, and difficulty in establishing and maintaining effective work and social relationships. The evidence does not otherwise show speech suggestive of disorders of thought or perception, difficulty understanding commands, or impairment of memory, judgment, or abstract thinking. 

Accordingly, the Board finds that the Veteran’s impairment due to adjustment disorder for the entire appeal period has been more consistent with a 50 percent rating and that the level of disability contemplated in Diagnostic Code 9400 to support the assignment of a 70 percent rating or higher was absent. This determination constitutes a partial grant of the claim on appeal. 

 

 

L. CHU

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board M. J. In, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.